RODNEY L. DAVIS *v.* STATE OF INDIANA.

[No. 3-773A78. Filed March 20, 1974.]

*Jerome E. Levendoski,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—On July 6, 1972, defendant-appellant Rodney J. Davis was charged by affidavit with the crime of armed robbery under IC 1971, 35-12-1-1, Ind. Ann. Stat. § 10-4709 (Burns Cum. Supp. 1973). To this charge he pleaded not guilty.

On December 20, 1972, the jury returned a verdict finding defendant-Davis guilty of armed robbery, and set his sentence at ten years. On January 15, 1973, the trial court entered judgment consistent with such verdict and sentenced Davis

to the custody of the Indiana Department of Corrections for a period of ten years.

Davis timely filed his motion to correct errors which was overruled and he then perfected his appeal.

The sole issue which will be considered is whether the trial court erred in admitting into evidence, over appellant's objection, testimony regarding certain extrajudicial statements made by him during interrogation by the police after his arrest.

An examination of the evidence in the record most favorable to the State discloses that at approximately 1:30 A.M., on the morning of July 3, 1972, Mr. Robert Mauricio, an employee of the Golden Imperial Service Station located at 2011 Fairfield Avenue in Fort Wayne, Indiana, was approached by two men as he waited on a customer outside of the station. The two men, later identified as Davis and one Earl Smith, asked where the cigarettes were kept. Mr. Mauricio informed them that the cigarettes were inside of the building. Davis and Smith then entered the station and Mauricio, after he had finished dealing with the customer, followed. Mauricio testified that upon entering the station he found that Smith had the cigarettes in his possession and that Davis was "over using the telephone at the time." After giving Smith change for a dollar bill, Mauricio seated himself. Smith thereupon confronted Mauricio with a gun and proceeded to remove approximately twenty dollars in cash from his left trouser pocket. The witness further testified that Davis, who was facing him at a distance of approximately two feet, did not speak to him but continued to talk on the telephone during the period in which Smith confronted him with the gun. After Smith had taken the money, Davis replaced the telephone receiver. Mauricio stated that Smith then instructed him to "stay away from the phone until they got out of sight," and that when "both of 'em got out of the door and ran around the building", he called the police.

On the morning in question, Officers Gary Lotter and Larry Anspach of the Fort Wayne Police Department were on patrol duty when they received a dispatch concerning an armed robbery which had taken place at the location of the Golden Imperial Service Station. While proceeding in the direction of the station, the officers noticed an automobile which was being driven in a suspicious manner. They proceeded to follow the vehicle for some distance and after observing further suspicious behavior on the part of the automobile's two occupants, stopped it.

Officer Lotter testified that he requested the driver to step out and produce identification. After the driver had complied, the officer noticed a gun on the front seat next to the subject whom he identified as the defendant. Thereupon, both the driver and Davis were advised that they were under arrest on a preliminary charge of violation of the Uniform Firearms Act and were informed of their rights. A subsequent search of the automobile and subjects produced five packages of "Kool" cigarettes and approximatly sixty dollars in cash.

Later, on the morning in question, Robert Mauricio, who had been brought to the scene of the arrest, identified the subjects as the two individuals who had earlier been in the service station.

An audit of the funds in the station after the robbery had occurred revealed a shortage of $19.05 in cash. Five packages of "Kool" cigarettes were also found to be missing.

After his removal to the police station, defendant-Davis was interrogated by police detectives during the morning and during the afternoon of July 3, 1972. The questioning which took place on these occasions is at issue in this appeal.

On December 12, 1972, the defendant filed a motion to suppress "any or all extrajudicial statements made by him which may tend to incriminate him."

Uncontradicted testimony at the subsequent hearing on defendant's motion to suppress discloses that on the occasion

in question, he initially agreed to speak to police detectives and signed a printed waiver of rights form, and that ten to twenty minutes later, he expressed his desire to confer with an attorney. At the conclusion of the hearing, the trial court ordered suppression of any and all statements made by Davis following his request to speak to an attorney.

During the course of the suppression hearing, the following exchange occurred between the court and defendant-Davis:

"THE COURT: All right. Now, in between the time you signed that paper and you told Sergeant Cook you wanted to talk to a lawyer, did you ever tell him anything that would be admitting that you had anything to do with the robbery? That's the question.

"A. Oh. Well, before the time I signed it, no.

"THE COURT: No, after you signed the paper, but before you asked for a lawyer, did you say anything that would be an admission you were involved in the robbery?

"A. (No response.)

"THE COURT: Did you tell him you were involved in it? Did you tell him anything—*anything that would admit you were there when it happened?* (Emphasis supplied.)

"A. Yes, I told him.

"THE COURT: Before you asked for a lawyer?

"A. Yes."

At the trial, over the continuing objections of defense counsel, the State offered the evidence of Sergeant Cook and Detective Harper, both of the Fort Wayne Police Department, regarding their interrogations of the defendant. However, from the dialogue occurring between the court and counsel over the proffer of this testimony, it is apparent that the court was under the impression that the defendant had testified at the suppression hearing that he admitted his complicity in the robbery prior to the time he requested counsel. However, the above-quoted record from the suppression hearing, while clearly indicating that the court's questions were intended to determine whether the defendant had admitted complicity

prior to asserting his right to counsel, just as clearly indicates that the last question asked and the one answered affirmatively by the defendant was simply whether he had admitted *that he was there* when the robbery happened.

The police officers were then permitted to testify, ostensibly as to the conversations held with the defendant prior to the point in time wherein he made his request for counsel.

Sergeant Cook testified that the defendant's rights were read to him at 10:45 A.M., and that he signed the waiver of rights at that time. He further testified that during the morning, the defendant readily admitted being present at the scene of the robbery but on two separate occasions during the morning, expressly denied any involvement in the robbery. He testified that his next conversation with the defendant was at approximately 11:30 A.M., at which time he told the defendant they would like to see the defendant again after lunch. He continued, that at 1:25 P.M. he went to the defendant's cell-block, brought the defendant to the interrogation room and subsequently the defendant admitted his involvement in the robbery.

Accordingly, the statements of Davis admitting not only presence at the scene of the robbery, *but involvement* in the robbery, were not made until sometime after 1:30 P.M. and clearly after the request for counsel, which was undisputedly made ten to twenty minutes after the original waiver of rights was signed at 10:45 in the morning. The conclusion of the trial court based upon the answer to the unfortunate double question is understandable but the testimony of Sergeant Cook and Detective Harper concerning the admissions of involvement should clearly have been excluded under the protective order of the trial court. *Miranda* v. *State of Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Beck* v. *State* (1968), 250 Ind. 276, 235 N.E.2d 699.

Having determined that the overruling of Davis' objections to testimony of Sergeant Cook and Detective Harper concern-

ing suppressed statements was error, the conviction must be reversed unless it is clear that the introduction of the inadmissible evidence made no contribution to the verdict. *Chapman* v. *State of California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Mitchell* v. *State* (1972), 259 Ind. 418, 287 N.E.2d 860.

In *Mitchell* v. *State, supra,* at 424 of 259 Ind., at 863 of 287 N.E.2d, Chief Justice Arterburn, speaking for our Supreme Court, stated:

> "In Indiana, it is well settled that the introduction of otherwise inadmissible evidence which is merely cumulative and not decisive of guilt is not prejudicial error. *See* Grimes v. State (1972), [258] Ind. [257], 280 N.E.2d 575; Jackson v. State (1971), [257] Ind. [477], 275 N.E.2d 538. However, if the record of the case, as a whole, discloses that the evidence introduced was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict rendered, we will be compelled to reverse."

The statements made by the defendant after requesting counsel amount to a confession. Their introduction must have had a prejudicial impact upon the mind of the average juror thereby contributing to the verdict rendered. Thus, we are compelled to reverse.

Reversed and remanded with instructions to grant a new trial.

Reversed and remanded.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 308 N.E.2d 408.