# Ralph Murphy *v.* State of Indiana.

[No. 1275S368. Filed November 8, 1977.]

*Oscar B. Smith, Jr., Smith & Mulligan,* of Knox, for appellant.

*Theodore L. Sendak,* Attorney General, *Susan J. Davis,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Murphy was convicted on four counts on February 11, 1975, at the conclusion of a jury trial in Marshall Circuit Court: (1) the first-degree murder of Chad Fivecoate; (2) the first-degree murder of Connie Fivecoate; (3) felony murder in conjunction with robbery; (4) accessory after the fact to first-degree murder. He received sentences of death by electrocution and life imprisonment, respectively, for the first two counts, and sentence of life imprisonment for the second two counts were vacated.

The evidence shows that Connie Jo Fivecoate and her nine year old son Chad were taken from their home in Russiaville at noon on July 18, 1974, by appellant and one Charles Lockhert. Appellant and Lockhert took several items from the home and then forced Mrs. Fivecoate and her son to go to a bank in Kokomo, where Mrs. Fivecoate was forced to cash a check for $536 for them. After having trouble with the car, the four proceeded to the apartment of Marianne Larson, Lockhert's girlfriend. Mrs. Fivecoate and her son were placed in a closet while appellant left to get his wife's car. Upon his return, he and Marianne Larson proceeded to another

bank in Kokomo where a $410 check was forged in Mrs. Five-coate's name. All then drove to a wooded area in Starke County where Connie and her son were shot to death by appellant and Lockhert. That night, the bodies were buried. The bodies were exhumed in August when Lockhert led police to the scene.

There are six issues for review before us. They concern: (1) the admission of confessions by appellant into evidence; (2) the sustaining of the state's objections to certain cross-examination questions put by the defense to state's witnesses; (3) the admission of certain photographs into evidence; (4) the giving of certain jury instructions tendered by the state; (5) the refusal of certain instructions tendered by the defense; (6) the imposition of the death penalty.

Three other issues argued by appellant will not be treated in this opinion. Appellant contends that the giving of the court's instruction on the death penalty was erroneous. Because of our disposition of issue VI of this appeal, however, any question concerning this instruction is moot. Appellant also asserts that the verdicts of the jury are contrary to law, but this error is waived since it was not preserved in the motion to correct errors. Ind. R. Tr. P. 59(G); *Spivey* v. *State*, (1971) 257 Ind. 257, 274 N.E.2d 227. Finally, appellant argues that he was denied the opportunity to voir dire a detective sergeant at the time appellant's confession, which had previously been admitted, was read to the jury. After the statement was read, the prosecutor passed the witness and the appellant did not cross-examine him. Appellant cites no authority for his contention that the court committed reversible error and he has thus waived this issue at this level. Ind. R. Ap. P. 8.3(A)(7); *Williams* v. *State*, (1973) 260 Ind. 543, 297 N.E.2d 805.

## I.

There are three grounds upon which appellant argues that his confessions should not have been admitted into evidence:

that these statements were not freely and voluntarily given; that he was denied his right to counsel, and; that he was not taken before a magistrate within a reasonable time.

Appellant was arrested at 7:00 a.m. on Friday, August 16, 1974, and placed in the Howard County Jail in Kokomo, Indiana. He was advised of all of his *Miranda* rights at this time, and indicated both his understanding of them and his willingness to waive them. Appellant's wife Barbara Jean called attorney Charles Newell later that day and asked him to represent her husband. Mr. Newell came to the jail on the evening of the 16th and talked to appellant, advising Murphy that he would represent him as his attorney at least through arraignment. He further advised Murphy that he had a right to remain silent and told him to exercise that right. Mr. Newell then advised Murphy not to give any statements unless he, Newell, was present. Appellant confirmed the substance of this conversation at the suppression hearing, and stated then that he had understood his right to remain silent as explained to him by Newell.

On Saturday, August 17, the police suggested to appellant Murphy that he take a lie detector test. Detective Sergeant Eckert indicated that if a lie detector test cleared Murphy, he would be set free. The police and the prosecuting attorney called attorney Newell, who ordered appellant not to submit himself to the lie detector test.

Appellant requested to talk to Detective Sergeant Eckert on Sunday, August 18. He was again advised of all his *Miranda* rights. He signed waiver forms of those rights and indicated that he understood them. However, there was no significant discussion between appellant and the police at this time.

Detective Eckert and Officer Burns talked to appellant on Monday, August 19, at the instance of appellant. Appellant stated that he wished to talk to them about the crime in question, but that he first wanted to have his wife present and

talk to her for a short while. Barbara Jean Murphy was called, and she came to the police station and talked to appellant briefly. Following this, appellant in the presence of his wife was again given the *Miranda* warnings and waived them orally and in writing. He told the police that he did not wish to have an attorney present, and wished to discuss the matter with them without his attorney being there. A cassette tape recorder was turned on at 3:58 p.m. and appel-. lant stated that he was aware of his being taped, that he was aware he had a right to have his attorney present but did not wish to have him there, and that he was willingly giving this statement. Murphy then proceeded to give a statement that took sixty pages to transcribe, giving the details of the kidnapping and subsequent killing of Connie Jo and Chad Fivecoate. Appellant talked in his own words and manner, the police interrupting only intermittently to ask him a question or clarify a point. There were times when appellant referred to his wife to establish times and events, such as when he returned home to get her car and then went back to Marianne Larson's apartment. She helped him to confirm such incidents and when they occurred. After the statement was later transcribed, appellant signed each page of it.

On September 3, appellant was taken to court for the first time, in Howard Circuit Court.

On September 4, appellant gave an additional statement to police, one page in length, telling them where they might find a gun that had been used in conjunction with the crime in question. Appellant was read his *Miranda* rights and waived them before giving this statement. During the subsequent suppression hearing, appellant admitted that he gave this statement willingly and understandingly. There was therefore no error committed by the trial court in admitting it into evidence.

As to the August 19th confession, appellant claimed at the suppression hearing that it was given involuntarily. Murphy

testified that he was deprived of sleep, food, and water for three days, that he was continually harassed and interrogated by police day and night during the entire period up to the time of his confession, and that he was coached to make the confession. He stated that the heat was kept high in his cell all during this time, even though it was the month of August. Other than this testimony of appellant, however, there was no other evidence that any of these events occurred. There was evidence that the boilers in the entire building were shut down, so it would have been impossible to apply any heat to appellant's cell. There was testimony that appellant received three regular meals a day, was allowed calls and visitation with his wife and attorney if he wished, and that he was not harassed or threatened by police in any manner. Both attorney Newll and Barbara Jean Murphy testified that when they saw appellant, before and after the time of his confession, he did not appear to be in any emotional or mental distress, nor did he indicate that his will had been broken in any way. He appeared to be rational and properly oriented. Murphy and his wife both testified that when he talked to her privately before giving the statement, he told her that he was going to tell the police a story that was not true and that he later would be able to prove it was not true, and that she was not to be concerned with the nature of the facts he gave. Whatever credibility one might give to this testimony, it does give credence to the state's position that the statement was given at Murphy's own free will and at his own instance.

The question of the admissibility of a confession is to be controlled by determining, from the totality of the circumstances, whether or not it was made voluntarily. *Works* v. *State*, (1977) 266 Ind. 250, 362 N.E.2d 144; *Ortiz* v. *State*, (1976) 265 Ind. 549, 356 N.E.2d 1188. The circumstances to be considered include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement of any sort, and whether the accused's will was overborne. *John-*

*son* v. *State,* (1968) 250 Ind. 283, 235 N.E.2d 688. Although the state at trial was required to prove the voluntariness of appellant's statement beyond a reasonable doubt, we review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial probative evidence to support the trial court's finding. *Works* v. *State, supra.* There was substantial probative evidence here to support the trial court's finding that this confession was voluntary.

Appellant further contends, however, that his confession should be suppressed because he was denied his right to counsel at the time he gave his confession. Appellant cites the cases of *Pirtle* v. *State,* (1975) 263 Ind. 16, 323 N.E. 2d 634, and *Davis* v. *State,* (1974) 159 Ind. App. 580, 308 N.E.2d 408, in support of this contention. In those cases, however, the records disclosed that the defendants had told police that they did not wish to give them a statement or discuss the case in any manner without first talking to an attorney or having an attorney present. Here, Murphy himself asked to talk to the police and told them that he wished to give them the facts of this case. He stated specifically that he knew he had a right to have an attorney present, but that he wanted to go ahead without his attorney there. Appellant had been given his *Miranda* warnings before giving his statement, and had also been given them twice previously by the police. His attorney had also informed him of his rights, and advised him to remain silent.

There is no question that the defendant can waive his right to have an attorney present when making any statement to the police, just as he can waive any other right. Where the assistance of counsel is waived, "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley* v. *Cochran,* (1962) 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed. 2d 70, 77. "If the interrogation continues without the presence

of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724. The record here shows an advisement of appellant's rights and an express statement that he did not want an attorney present, followed by the confession. The state has thus met its burden of showing that appellant's waiver of the presence of an attorney was intelligent and understanding. *Cf. Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724; *Lane* v. *State,* (1977) 266 Ind. 485, 364 N.E.2d 756, 759.

Appellant finally contends that his August 19 confession was inadmissible because it was given during an unreasonable delay before taking him before a magistrate. The facts show that approximately eighty-one hours passed between Murphy's arrest on Friday, August 16 and his confession on Monday, August 19. He was not taken to court until September 3. This was an inordinate length of time for appellant to be kept in jail without being taken to court and the record fails to disclose the reason for it.

In respect to confessions given to police during periods of unreasonable delay before taking defendants before magistrates, Ind. Code § 35-5-5-3 (Burns 1975) provides:

> "In any criminal prosecution . . . a confession made or given by a person who was under arrest or other detention . . . shall not be inadmissible solely because of the delay in bringing such person before a judge if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six [6] hours immediately following his arrest or other detention:
>
> "Provided, That the time limitation contained in this section shall not apply in any case in which the delay in bringing such person before a judge beyond such six [6]

hour period is found by the trial judge to be reasonable, considering the means of transportation and the distance to be traveled to the nearest available judge."

Thus, delay in presenting the defendant before a magistrate does not make a confession inadmissible as a matter of law, but is rather one factor to be considered in the question of admissibility. See *Apple* v. *State*, (1973) 158 Ind. App. 663, 304 N.E.2d 321, *and cases cited therein*.

Partly on the basis of the above statute, this court suppressed a confession which it found to be the result of an illegal sixty-eight hour detention in *Williams* v. *State*, (1976) 264 Ind. 664, 348 N.E.2d 623. That case, however, involved several factors which are not present here: an arrest without either a warrant or probable cause, *Miranda* warnings which did not clearly set out the defendant's right to have counsel prior to questioning and which were not explained by the police, and the absence of any circumstances intervening between the arrest and the confession which would have shown the statement to be a product of defendant's free will. In the present case, Murphy was arrested with a warrant, the police having obtained probable cause through discussions with Murphy's companion Lockhert. There is no question here about the adequacy of *Miranda* warnings, and Murphy's understanding of them. Finally, Murphy did in fact consult with an attorney hired by his wife, who further explained his rights and advised him not to talk. There is no evidence presented that the length of the detention here caused Murphy's will to break. On the other hand, there was evidence of his willingness to talk to police and of his explicit wish to do so in the absence of his attorney, together with the other evidence of the voluntariness of this confession. Thus, the length of the detention here, in the absence of taking appellant before a magistrate, does not make this confession inadmissible.

There was no error in admitting the confession of appellant into evidence.

## II.

Appellant was prohibited from asking certain questions during the cross-examination of a number of state's witnesses. In all of these instances, the court sustained objections of the state on the grounds that these questions went beyond the scope of direct examination. The record demonstrates that the objections were correctly sustained on this basis. The scope of cross-examination is limited to the scope of direct examination, *Gatchett* v. *State*, (1973) 261 Ind. 109, 300 N.E.2d 665, and a party may not make out a defense or rebuttal by cross-examining witnesses as to matters not within the scope of direct examination, *Potter* v. *State*, (1971) 257 Ind. 370, 274 N.E.2d 699.

Appellant also attempted to question a witness as to whether appellant was of a vicious nature and whether appellant was capable of committing murder. An objection to the former question was sustained, and the state withdrew its objection to the latter question. Appellant, however, never repeated the latter question. The conduct of cross-examination is within the sound discretion of the trial court and will not be reversed unless there is an abuse of that discretion. *Pulliam* v. *State*, (1976) 264 Ind. 381, 345 N.E.2d 229; *Siblisk* v. *State*, (1975) 263 Ind. 651, 336 N.E.2d 650. Appellant has failed to demonstrate how the action of the trial court was prejudicial to his case or an abuse of discretion, and there is no error here.

## III.

Appellant objected at trial to the admission of autopsy photographs of the decomposed bodies of an adult female and a male child, on the grounds that they were prejudicial and inflammatory. The photographs were admitted in conjunction with the testimony of Doc-

tor James Benz, who was established as an expert witness in the field of pathology and who testified extensively and in detail regarding the appearance of the bodies and his findings upon examination of them. Photographs may be admitted where testimony concerning that which they depict would be proper. *Stephens* v. *State,* (1973) 260 Ind. 326, 295 N.E.2d 622. Their relevancy may be determined by inquiry as to whether a witness would be permitted to describe verbally the objects photographed. *Patterson* v. *State,* (1975) 263 Ind. 55, 324 N.E.2d 482. Doctor Benz testified here as to the decomposed condition of the bodies and of the skull wounds his examination revealed. Since the exhibits were photos depicting his description, the court did not abuse its discretion in admitting the photographs and the trial court's ruling will not be disturbed. *Johnson* v. *State,* (1972) 258 Ind. 648, 283 N.E.2d 532.

## IV.

Appellant asserts that the trial court erred in giving three instructions tendered by the state.

The court read to the jury State's Instruction No. 1, which advised them:

"If you find from the evidence beyond a reasonable doubt that the defendant intended to kill a human being and by concerted action with another committed illegal acts which resulted in the death of Chad Fivecoate, then a necessary element of intent is satisfied."

The appellant argues that it was shown that he had the requisite mental state to purposely and with premeditated malice kill Connie Fivecoate, but that there was not the same requisite mental state shown with regard to the killing of Chad. There was evidence in this case, however, that there was agreement between appellant Murphy and Charles Lockhert that they would each shoot one person, and that appellant then shot Connie Fivecoate and that Lockhert shot Chad. This was a proper instruction for the jury in view of those facts.

State's Instruction No. 3 was a general definition of malice, and State's Instruction No. 6 advised the jury that use of a deadly weapon is sufficient to support an inference of intent to commit murder. Appellant gives no grounds for his objections to these instructions. There is thus no reason for this court to consider these instructions any further. Ind. R. Ap. P. 8.3 (A) (7) ; *Whitten* v. *State,* (1975) 263 Ind. 407, 333 N.E.2d 86.

V.

Five instructions tendered by appellant were refused by the trial court.

Defendant's Instruction No. 2 proposed to instruct on the evidence necessary to justify a conviction as an accessory. The court had fully instructed the jury about accessories in two preliminary instructions which were reread as final instructions. It is not error to refuse an instruction the substance of which is covered by another instruction. *Martin* v. *State,* (1973) 260 Ind. 490, 296 N.E. 2d 793.

Defendant's Instruction No. 6 stated that accomplice testimony should be cautiously received and carefully scrutinized by the jury as to its credibility. The instruction here was expressly disapproved in *Turner* v. *State,* (1972) 258 Ind. 267, 280 N.E.2d 621. Since the instruction was directed to the testimony of one witness it was erroneous as an invasion of the province of the jury. *Taylor* v. *State,* (1972) 257 Ind. 664, 278 N.E.2d 273. Instructions on the credibility of witnesses should be general in nature and apply equally to all witnesses. *Evans* v. *State,* (1973) 261 Ind. 148, 300 N.E.2d 882.

Defendant's Instruction No. 7 proposed to instruct the jury generally on the credibility of witnesses. In an instruction given by the court, this subject was fully covered. The court's instruction did not include a reference to the "witnesses' relationship, if any, to the ac-

cused." It did, however, advise the jury that they were to consider the interest or lack of interest of any witness in the outcome of the trial, and further instructed them that they could take into consideration any and all other facts and circumstances to aid them in determining who to believe or who not to believe. Thus, the court's instruction fully covered the subject and refusal of Defendant's Instruction No. 7 was not error.

Defendant's Instruction No. 11 proposed to instruct the jury on alternative verdicts and lesser included offenses possible in the case of Chad Fivecoate. This instruction was repetitious of a court's instruction which was given to the jury, and was thus properly refused. Defendant's Instruction No. 14 would have told the jury that there was no direct evidence that appellant killed Chad Fivecoate. This was properly refused as it would have been an invasion of the jury's province, and nothing more than a comment on the weight to be given certain evidence.

## VI.

Appellant correctly asserts the unconstitutionality of Ind. Code § 35-13-4-1 (Burns 1975), under which his sentence of death was imposed. *Fair* v. *State,* (1977) 266 Ind. 380, 364 N.E.2d 1007; *French* v. *State,* (1977) 266 Ind. 276, 362 N.E.2d 834. We therefore order this cause remanded to the trial court with directions to set aside the death penalty and to sentence the appellant to life imprisonment.

The case is remanded with these instructions to the trial court, and otherwise affirmed.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 369 N.E.2d 411.