Mickey C. McCONNELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 781S181.

Supreme Court of Indiana.

June 30, 1982.

James V. Tsoutsouris, Public Defender of Porter County, John F. Hoehner, Chief Deputy Public Defender, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Mickey C. McConnell, defendant-appellant, was found guilty of Fraud, Ind.Code § 35–43–5–4 (Burns Repl.1979), in a jury trial in Porter Superior Court on January 16, 1981. That same day defendant was found to be an Habitual Offender. On February 11, 1981, defendant was sentenced to thirty-four (34) years in prison. He now appeals.

Defendant raises six errors on appeal, concerning: 1) whether the trial court failed to maintain its requisite impartiality and abused its discretion in denying a change of judge; 2) whether the trial court erred in granting the State's motion for continuance and allowing the State to file a habitual offender charge one day prior to trial; 3) whether the trial court erred in allowing certain exhibits, such as a wallet, driver's license, and other cards, to be admitted into evidence; 4) whether the trial court erred in failing to grant defendant's motion for mistrial; 5) whether the trial court erred in admitting defendant's criminal record into evidence at the habitual offender phase of the trial; and 6) whether the trial court imposed an excessive sentence.

The evidence most favorable to the State shows that defendant McConnell was arrested by a Valparaiso police officer at a filling station after purchasing gasoline with a stolen credit card. Defendant was identified by the owner, Charles M. Schroeder, as the individual who purchased $10.00 worth of gasoline from Mr. Schroeder on November 1, 1979, using a credit card bearing the name of Thomas Mattern and forging the name of the owner to the charge slip. The credit card had been stolen from the purse of Mr. Mattern's wife and had been reported stolen by the Matterns to Sohio, the issuer of the credit card. A wallet found on the seat of the automobile defendant was driving at the time of his arrest contained credit cards, a social security card, and a driver's license, bearing the names of various persons. Defendant identified himself to the police by several names including Jonathan Pranitis, Harry Jewel, P. Jewel, R. Wease, and Elvin Bray. Defendant was in the habit of using other aliases, in addition to the ones already mentioned.

The trial date was set for January 14, 1981. On that day, the State filed a motion for continuance, stating that more time was needed to file an habitual offender count and also that the court calendar was congested. The trial court granted the continuance but indicated it was "not necessarily for the reason stated in the request for the continuance" and rescheduled the jury trial for the following day, January 15, 1981.

I.

Counsel for the defendant overheard the trial judge on the telephone in his chambers, talking to two witnesses in the state of Ohio about their coming to Indiana to testify as witnesses for the State. Defendant contends that it was improper for the judge to discuss the case with witnesses

for one of the parties and therefore filed a motion for change of judge. It was the expressed opinion of defense counsel that by discussing the case with witnesses for the State, the judge had shown partiality and was compelled to disqualify himself from hearing the matter.

This motion for change of judge was verified but was signed by defendant's counsel rather than by defendant himself. The trial judge denied the motion and gave the following reasons:

> THE COURT: Okay. The Court will address itself to the Motion for Change of Judge and will indicate that the Court did contact two prospective witnesses for the State, who live in the State of Ohio. The Court's sole reason for contacting these two people was to ascertain if they would voluntarily be present this week so that we could proceed with the case. The Court contacted them at a time the jury was here and the Prosecutor for the State indicated he was not sure at that time if these people could be available and what date they would be available. So the sole purpose of the Court contacting them was to ascertain when to start this jury trial, whether to start it this week or have to reset the case and start it at a time when they would be able to be present. The Court did not discuss the case with them or discuss their testimony with them. The Court does not know them, has never seen them before. One of the two prospective witnesses indicated that they (sic) would like to return to their (sic) state the same day that they (sic) testified here and wanted some indication from the Court about approximately how long their (sic) testimony would be, and the Court, based on the Probable Cause Information, indicated it did not feel their testimony should be too long and would be able to return to Ohio the same day that they (sic) testified here. So that being the only contact by the Court, the Court thinks that the Verified Motion for Change of Judge should be denied, and the Court now denies same.

*Record* at 114.

Defendant cites as reversible error the action of the trial judge in discussing this matter with the witnesses and subsequently denying the motion for change of judge. We agree with the defendant's assertion that the trial judge must refrain from acting with partiality. *Griffin v. State*, (1981) Ind., 415 N.E.2d 60, 62; *Brandon v. State*, (1979) Ind., 396 N.E.2d 365, 371; *Brannum v. State*, (1977) 267 Ind. 51, 53, 366 N.E.2d 1180, 1182. However, an examination of the record indicates that the judge did not act improperly. As the trial judge indicated in his statement in the record, the sole reason for calling the witnesses was to determine their availability at the trial the next day so that he would be able to meet his responsibilities of managing the court's operation by knowing whether or not this cause could be presented to the jury. Out-of-state witnesses cannot, of course, be required to answer to subpoena from a state court and apparently the prosecuting attorney had uncertain commitments from the witnesses. There is no allegation or showing here that the judge did anything further than assure himself from the witnesses that they could and would be present to testify on the following day. The witnesses in question were Thomas Mattern and his wife. It was Thomas Mattern's credit card that was used by defendant to obtain gasoline on credit from Charles Schroeder, the owner of a filling station in Valparaiso, Indiana, by presenting the credit card to Mr. Schroeder and signing Mr. Mattern's name on the credit receipt. Thomas Mattern's testimony consisted of identification of his credit card, a statement that to his knowledge the credit card was in the custody of his wife and was stolen from her purse, that the theft of the card was reported to the issuer of the card, Sohio, that he did not know the defendant and had never seen him before and that he had not given the defendant nor anyone else permission to use his credit card. Thomas Mattern's wife confirmed this testimony. Neither of the Matterns were able to identify the defendant nor was any of their testimony directed at him personally. In view of this, it is

difficult to see how the defendant was unduly prejudiced by the action of the trial judge in directly talking to these witnesses to ascertain whether or not their presence could be expected in the Porter Superior Court. The jury was the trier of fact and the testimony of these witnesses together with their credibility was to be determined by the jury and not by the trial judge. The trial judge therefore did not abuse his discretion in denying the motion for change of venue from the judge.

Defendant raises another issue relating to the testimony of the Matterns. When Thomas Mattern was on the stand and testified for the State, defense counsel indicated to the judge, out of the presence of the jury, that he wished to take the witness on *voir dire* to question him regarding his discussion of his testimony with the judge the day before. The judge indicated to trial counsel that he would not permit such *voir dire* and denied the request. After witness Mattern had testified for the State, defense counsel, on cross-examination, asked the witness if he had talked to Judge Douglas in regard to the case. Judge Douglas stopped counsel from questioning the witness any further on that subject, indicating to counsel that he had already placed in the record a statement revealing that he had talked to the witnesses about their presence so. that he would know whether or not he could set the case for trial and he felt the matter was not relevant to the jury and beyond the scope of direct examination. Counsel was therefore not permitted to cross-examine the witness on this area.

▇▇▇ Defendant now assigns as reversible error the conduct of the trial judge in not permitting him to pursue the subject on cross-examination. In view of the facts and circumstances set out above, it does not appear that the trial judge abused his discretion in limiting cross-examination of the Matterns. While it is true that the right of a defendant to confront witnesses includes the right of full, adequate, and effective cross-examination, *Pointer v. Texas*, (1965) 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923;

*Lagenour v. State*, (1978) 268 Ind. 441, 376 N.E.2d 475; *Sears v. State*, (1972) 258 Ind. 561, 282 N.E.2d 807, this Court has also held that the scope of cross-examination is, as a general matter, subject to the trial court's discretion. *Haak v. State*, (1981) Ind., 417 N.E.2d 321, 322; *Ashbaugh v. State*, (1980) Ind., 400 N.E.2d 767, 772; *Murphy v. State*, (1977) 267 Ind. 184, 194, 369 N.E.2d 411, 416. The testimony of the Matterns, although of primary importance to the State, consisted of identifying the credit card, affirming that it had been stolen in Ohio, and stating that neither Mattern nor his wife knew the defendant. Full cross-examination was permitted on the subject of their testimony, but questioning the Matterns about their discussion with the judge was outside the scope of direct examination; in addition, the judge stated earlier that he did not discuss the case with the witnesses. There is no showing here that any responses from the witnesses in regard to the proposed questions from defense counsel would significantly demonstrate questions about their credibility or possible bias. There was no abuse of discretion in limiting the cross-examination.

## II.

On November 2, 1979, the State of Indiana filed an information charging defendant with fraud, alleging that defendant had used the credit card of Thomas Mattern without his consent and with the intent to defraud Schroeder's Service Station. On December 3, 1980, an omnibus hearing was conducted and trial by jury on the fraud charge was set for January 14, 1981. During the omnibus hearing defendant's prior felony convictions were discussed and a "rap sheet" subsequently discussed in this opinion was provided defense counsel. This "rap sheet" indicated defendant had been convicted of at least six felony charges. On January 13, 1981, the day before trial was scheduled to begin, the State of Indiana filed its verified motion for continuance. The reasons given by the State for its motion for continuance were: 1) that another trial was set for the same day in the same

court, and 2) that evidence in the form of certified copies of prior felony convictions which were needed to enable the filing of an habitual offender charge were not yet available to the State due to the number of aliases used by defendant and the number of jurisdictions in which he had been convicted.

On January 14, 1981, the day originally scheduled for trial, defendant was arraigned on the habitual offender count which charged that he had accumulated two prior unrelated felony convictions and the court then granted a continuance to the State for one day or until January 15, 1981. Trial began on that date.

Defendant now complains that the charging information did not sufficiently give notice of which charges the prosecuting attorney intended to prove in the habitual offender stage of the bifurcated trial and further that the motion for continuance was improperly granted by the court.

■ Defendant claims that the habitual offender count was not specific enough as it did not inform him of the charges he was called upon to defend. The count followed the language of the statute, Ind.Code § 35–50–2–8 (Burns Supp.1981) where it charged that defendant had accumulated two prior unrelated felony convictions. At the omnibus hearing on December 3, 1980, defendant was furnished a copy of his criminal record. Further, defendant asked for and was granted two days within which to file his motion to dismiss the information. Defendant did move to dismiss the habitual offender charge within the two days given him by the trial court but the motion was denied. Defendant did not then seek a continuance nor allege that he needed more time to investigate the charges or prepare a defense to them. In regard to the due process consideration of notice as applied to recidivist statutes, the Supreme Court of the United States in *Oyler v. Boles*, (1962) 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 stated as follows: "[A] defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense." *Id.* at 452, 82 S.Ct. at 504, 7 L.Ed.2d at 450. Bringing a charge of habitual offender often poses a special problem in a criminal proceeding. Our Court of Appeals spoke to this problem in *Lewis v. State*, (1975) 166 Ind.App. 553, 337 N.E.2d 516 as follows:

"While prior conviction is within the knowledge of the defendant, it is often not known to the prosecutor or law enforcement officers when the charge is initially filed. In addition, limiting the necessary amendment of the charges in order to invoke such penalties to a time prior to arraignment would have the effect of deterring rather than promoting the prompt arraignment of those accused of criminal activity. Such a result we do not desire."

*Id.* at 562, 337 N.E.2d at 520.

It appears from all the facts and circumstances here, defendant was given sufficient notice to defend himself on the habitual offender charge.

■ Defendant also maintains that the continuance was improperly granted to the State. The trial court indicated that it would grant the continuance but not necessarily for the reasons given by the State. The trial court never gave its reasons. Defendant now claims that apparently the continuance was given so that the State could bring witnesses to the trial. Statutory grounds for granting a continuance for obtaining witnesses require an affidavit that the witnesses have been endorsed on the information, the names and residences of the witnesses, if known, and the probability of procuring their testimony within a reasonable time. Ind.Code §§ 35–1–26–1, –2, (Burns Repl.1979). The statute further provides that if the defendant will admit that the witness will testify to the facts the prosecutor states he expects to prove by the witnesses, or if the evidence be documentary, that such documentary evidence exists, then the trial shall not be postponed for that cause. There was no effort by the State or defendant to agree about what the witnesses might testify to on the stand. In

addition, the court did not indicate that it was granting the continuance solely for the purpose of obtaining State's witnesses. The trial court has broad discretion in granting continuances and will not be reviewed on appeal unless the court abused that discretion to the injury of the complaining party. *Gregory v. State*, (1972) 259 Ind. 295, 286 N.E.2d 666; *Rose v. State*, (1941) 219 Ind. 44, 36 N.E.2d 767. The trial court did try another cause on January 14. The case at bar began on January 15 and was completed on January 16. No relief was asked of the court by the defendant with regard to the one day continuance at the time it was granted. Defendant does not show in what way he was harmed or prejudiced by the one day continuance. Further, it appears that the court had justifiable grounds in granting the continuance in view of all the surrounding circumstances at the time. We therefore see no error that unduly prejudiced the defendant by the granting of the one day continuance.

### III.

Valparaiso police officer David Lippens was in the Schroeder gasoline filling station and observed the credit card transaction between Mr. Schroeder and defendant. After the transaction was completed and Mr. Schroeder gave defendant a credit card receipt and returned the credit card to defendant, Officer Lippens called the Valparaiso Police Department for assistance and defendant was arrested there at the scene. Defendant was alone in the automobile he was driving. On the front seat, to his right, was a billfold. The police officers took possession of this billfold and in an attempt to determine defendant's identity, inventoried the items in it. These items were admitted into evidence as State's Exhibits 1 through 8. State's Exhibit 1 was the wallet itself, Exhibit 2 was the credit card of Thomas Mattern used in the fraudulent transaction, Exhibit 3 was a VISA credit card issued to a Ruth Croy, Exhibit 4 was a motor vehicle operator's license issued to Jonathan R. Pranitis, Exhibit 5 was a Social Security card issued to Jonathan R. Pranitis, Exhibit 6 was a Selective Service Status card issued to a Jonathan Richard Pranitis, and Exhibit 7 was a telephone credit card bearing a credit number but no name. State's Exhibit 8, taken from the billfold along with the other items, was the credit card receipt showing the purchase with Thomas Mattern's credit card in question here. State's Exhibit 9 was the hard copy of the same transaction, obtained from Mr. Schroeder by the police. State's Exhibit 10 was a credit card receipt from Mr. Thomas Mattern, showing the last transaction on the credit card in question here before it was stolen and bearing the credit account number that corresponded with that of the credit card used by defendant.

Prior to trial, defendant filed a motion *in limine* asking that the State be prohibited from attempting to present any evidence indicating the existence of State's exhibits 1 through 7 as well as some hypodermic needles also found in the automobile and, further, the fact that the license plates on the automobile were stolen plates. The trial judge granted the motion with respect to the stolen license plates and the hypodermic needles but denied the motion in all other respects. Defendant contends that the admission into evidence of Exhibits 1 through 7 was reversible error since it was irrelevant evidence and tended only to prove the defendant guilty of other crimes.

These items were properly admitted in this cause against the defendant for credit card fraud under the well-settled law stated in *Jenkins v. State*, (1975) 263 Ind. 589, 335 N.E.2d 215, as follows:

"As a general rule, evidence of separate, independent and distinct crimes is inadmissible to establish a defendant's guilt of the crime charged. However, evidence which is otherwise competent or relevant and which tends to show the defendant's guilt of the crime charged is not excluded merely because it proves or tends to prove him guilty of another crime, especially where the crimes are connected. *Grimes v. State*, (1972) 258 Ind. 257, 280 N.E.2d 575. Indiana specifically recognizes exceptions where the evidence is to show intent, motive, purpose, identifica-

tion, or a common scheme or plan. *Vandeveer v. State*, (1971) 256 Ind. 509, 269 N.E.2d 865."

*Id.* at 591, 335 N.E.2d at 217.

This wallet, with the items therein, was on the seat beside the defendant. In the same billfold was the credit receipt of the transaction representing the charge here. One of the names given to the police by the defendant as his own identity was Jonathan Pranitis, the name appearing on Exhibits 4, 5, and 6. One of the items was the credit card of Thomas Mattern and the others were credit or identification cards of people other than the defendant. Several names were given to the police by the defendant as his identity and the only way the police had of determining actual identity was to send a copy of his fingerprints to the FBI, which was able to positively match those prints with his proper name of Mickey C. McConnell and also demonstrate that those prints identified the defendant in other crimes he committed using other names. This latter fact will be discussed further in a later issue in this opinion. In view of the evidence before the court and jury at the time these items were offered into evidence, the exhibits were competent to be considered by the jury to show intent, motive, purpose, identification and common scheme or plan. *Armstrong v. State*, (1980) Ind., 412 N.E.2d 1207; *Porter v. State*, (1979) Ind., 397 N.E.2d 269.

### IV.

During defense counsel's cross-examination of State's witness, Officer David Lippens of the Valparaiso Police Department, the following questions and answers were given:

[DEFENSE COUNSEL]: Officer, let's go back to when you observed the Defendant at the gas station. How long a time did that whole thing take place between the time you first observed him and the time you stopped the vehicle?

[OFFICER LIPPENS] You mean the time I approached the vehicle?

Q: Yes.

A: I would say five minutes, maybe six minutes at the most.

Q: Did you ever run the vehicle identification number of that vehicle to find out if that vehicle belonged to Mickey McConnell?

A: Yes, sir.

Q: Was that *vehicle ever reported stolen* ?

A: The *license plate* was reported.

*Record* at 137–38 (emphasis added).

The automobile driven by the defendant at the time of this incident was not reported stolen but apparently belonged to a girl friend of the defendant. The license plates were stolen plates. Defendant contends that Officer Lippens could have answered the question of whether or not the automobile was reported stolen as "yes" or "no" and that his unresponsive answer, referring to the stolen license plate, was intended as an evidentiary harpoon to prejudice and poison the jury's collective mind against the defendant and violated the *in limine* order entered by the court prior to trial. Defense counsel immediately moved for mistrial. Defense counsel told the court that he felt he was entitled to a mistrial since the answer of the officer was in violation of the *in limine* order and also that the answer was not responsive to the question. The court then stated: "The response might not have been exactly responsive to your question, but seemed to me it was pretty close." The court then denied the motion for mistrial and directed the witness to specifically respond to the question asked by defense counsel.

It appears that the trial judge properly assessed the answer of the officer to be a logical one in view of the question asked him. Lippens further testified that the police had difficulty in determining the ownership of the automobile, they were able to determine that it did not belong to the defendant and "apparently" it belonged to defendant's girlfriend. Identification of ownership of a vehicle is very closely tied with the license number and plate assigned to it, as well as the person who holds the title to the automobile and the one to whom

the license plates are registered. The officer's answer was, therefore, not so unresponsive as to indicate it was done deliberately with an intent to purposely prejudice the defendant's cause. Furthermore, it appears that counsel invited the answer by questioning Officer Lippens about whether the car was stolen. It therefore does not appear that defendant was unduly prejudiced by the manner in which the trial judge handled the situation. Furthermore, it appears the State's position is well taken when it indicates that mentioning the fact that a license plate was stolen could not be considered to place appellant in grave peril in view of the overwhelming and uncontradicted evidence that he used a stolen credit card, signed a name not his own, and obtained ten dollars ($10.00) worth of gasoline. *See Biggerstaff v. State*, (1977) 266 Ind. 148, 361 N.E.2d 895; *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312. We find no error here.

### V.

After the jury returned a guilty verdict on the fraud charge, the second portion of the bifurcated proceedings were begun in regard to defendant being charged as an habitual offender. The first witness called by the State of Indiana was officer Walter Lamberson of the Valparaiso Police Department. He testified that on November 1, 1979, he took the fingerprints of defendant at the Valparaiso Police Department. These prints were then forwarded to the Federal Bureau of Investigation for classification purposes. At this point in Lamberson's testimony the State offered into evidence State's Exhibit 3, which was a certified copy of a felony conviction emanating from the State of Georgia in regard to defendant McConnell and State's Exhibit 4, a certified copy of a felony conviction of a Claude Jackson emanating from the United States District Court for the Western District of Wisconsin. Both of these exhibits were admitted into evidence. The State then called David Laraby, a fingerprint specialist with the FBI. Witness Laraby then identified the following exhibits: State's Exhibit 1, which was the fingerprint card

secured by Lamberson, and State's Exhibit 2, a copy of State's Exhibit 1; State's Exhibit 5, another fingerprint card, and State's Exhibit 6, a copy of State's Exhibit 5; State's Exhibit 7, a fingerprint card bearing the name of Claude Jackson, and State's Exhibit 8, a copy of State's Exhibit 7; State's Exhibit 9, a fingerprint card of Claude Jackson, and State's Exhibit 10, a copy of State's Exhibit 9. Laraby then identified State's Exhibit 11 as "a copy of a docket sheet or a sheet which contains a description of all items which are contained in the fingerprint identification record of the Identification Division of the Federal Bureau of Investigation pertaining [to] a person known as Mickey McConnell or Claude Jackson." Laraby then testified that the fingerprints appearing on all of these exhibits were made by one and the same individual and no other person. On *voir dire* examination of Laraby by defense counsel, Laraby testified that he did not personally take the prints involved in Exhibits 2, 6, 8, or any of the fingerprint cards represented by the exhibits and appearing on Exhibit 11. He testified that these items came to the FBI from various police departments and that the fingerprints contained on all of the cards were made by one and the same person.

Defendant's objection is directed to Exhibit 11, which he characterizes as nothing but a "rap sheet" that was not certified and had no effect except to prejudice the jury against the defendant. Defendant contends that it contains unexplained, unproven information regarding supposed criminal activity of Mickey Charles McConnell and Claude Jackson for a period from November 17, 1966, to November 1, 1979, and was not properly admissible into evidence. The two prior convictions relied on by the State for a finding of an habitual criminal were a conviction on June 1, 1972, for kidnapping, by an individual named Claude Jackson, and a conviction for credit card fraud on November 10, 1976, in Georgia, against one Mickey C. McConnell. It is the contention of the State that due to defendant's proclivity for using as-

sumed names it was incumbent upon the State to prove that McConnell and Jackson were one and the same person as borne out by the fingerprint records of the FBI, and that Exhibit 11 was admitted for this purpose. The State further contended that Exhibit 11 was properly admitted pursuant to this Court's decision in *Jones v. State*, (1977) 267 Ind. 205, 369 N.E.2d 418, concerning the business records exception to the hearsay rule. Under the business records exception to the hearsay rule as outlined in *Jones*, documentary evidence is admissible if identified by "its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry." *Id.* at 209, 369 N.E.2d at 420. The sponsor of an exhibit offered under the business record exception to the hearsay rule need not have personally made it, filed it, or had first-hand knowledge of the transaction represented by it, but he need only show that the exhibit is part of records kept in routine course of business and placed in the record by one who is authorized to do so and who has personal knowledge of the transaction represented at the time of the entry. *Jones, supra; see also Morris v. State*, (1980) Ind., 406 N.E.2d 1187, 1191; *Thompson v. State*, (1979) Ind., 386 N.E.2d 682, 684; *Crosson v. State*, (1978) 268 Ind. 511, 518, 376 N.E.2d 1136, 1141.

■ Included on Exhibit 11 were the two crimes the State proved to have been previously committed by the defendant, for which he was convicted, as well as other convictions and suspected criminal activity. The purpose of the records represented by the entries in Exhibit 11 to which Laraby testified, was the identification of defendant, by fingerprints, as the individual concerned in the criminal transaction represented in each entry. Laraby was the Assistant Custodian of these records. He testified how the records are kept, where they are kept, and under whose control they are kept. Laraby stated that all the exhibits

came from the fingerprint identification file kept by the FBI for that purpose and also all fingerprints were of the same person, including Exhibits 1 and 2, which were the defendant's fingerprint cards made by Officer Lamberson and forwarded to Laraby's office. Exhibit 11 was, therefore, admissible into evidence in support of Laraby's testimony.

■ Furthermore, any other information that appeared on Exhibit 11 that tended to connect defendant with other criminal convictions or activities not certified by the State would only be harmless to defendant since the State proved McConnell's two unrelated felony convictions by certified records and Laraby's testimony. The only proof necessary for an habitual offender finding is that the defendant had been previously convicted twice of unrelated felonies. Evidence of other convictions on Exhibit 11 would be surplusage since defendant's 1972 kidnapping conviction and 1976 credit card fraud conviction had already been shown by the State. Error, if any, in the admission of evidence is harmless if it is only cumulative of other undisputed and properly admitted evidence. *Jackson v. State*, (1980) Ind., 402 N.E.2d 947, 951; *Ballard v. State*, (1974) 262 Ind. 482, 492, 318 N.E.2d 798, 804.

## VI.

Finally, in his motion to correct errors, defendant, for the first time, alleged that credit card fraud is a lesser-included offense to criminal conversion and that since the maximum sentence that could have been imposed for criminal conversion was one year, that the sentence of two years for fraud was excessive and, furthermore, an habitual offender finding was improper since conversion is a class A misdemeanor and not a felony.

■ In the first place defendant's argument in this regard is in direct conflict with his contentions at the trial. Defendant tendered to the trial court an instruction that conversion is a lesser included offense of the crime charged, credit card fraud, and the court gave this instruction and also

gave an instruction defining the crime of conversion. The court also tendered a verdict to the jury for conversion as a lesser-included offense of fraud. Further, we do not interpret the statutes as the defendant has done. Fraud, the crime with which defendant was charged and found guilty, is Ind.Code § 35–43–5–4 (Burns Repl.1979) and provides as follows:

"A person who:

(1) With intent to defraud, obtains property by (i) using a credit card, knowing that the credit card was unlawfully obtained or retained, (ii) using a credit card, knowing that the credit card is forged, revoked, or expired, (iii) using, without consent, a credit card that was issued to another person, (iv) representing, without the consent of the credit card holder, that he is the authorized holder of the credit card, or (v) representing that he is the authorized holder of a credit card when the card has not in fact been issued;

. . . .

commits fraud, a Class D felony."

Conversion is defined in Ind.Code § 35–43–4–3 (Burns Repl.1979) as: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." Appellant here was convicted of obtaining the property of Charles Schroeder by using a credit card knowing that the credit card was unlawfully obtained and knowing that he was doing so without consent of the owner and knowing that he was not the authorized holder of the credit card but representing to the victim that he was the authorized holder of the credit card and had authority to use it. Fraud defines actions which go further than exerting unauthorized control over property of another, such as the criminal conversion definition and in the statute itself describes the use of a credit card over which the user has unauthorized control to commit fraud upon another person by misrepresenting to him that he is authorized to use the credit card. § 35–43–4–3 describes only the exertion of unauthorized control over property and intends that that is a lesser included offense of the fraud described in § 35–43–5–4(1).

■ The court then sentenced McConnell to two years for the crime of fraud, a class D felony and further added two years, finding that there were aggravating circumstances justifying this addition. The court properly followed the statute by finding aggravating circumstances based on defendant's lengthy criminal record. The court then added an additional term of thirty years to the penalty pursuant to the jury's finding that defendant was an habitual criminal. Ind.Code § 35–50–2–8 (Burns Supp.1981). Defendant's total sentence was thirty-four years. The court properly sentenced the defendant.

The trial court is in all things affirmed.

GIVAN, C. J., concurs.

DeBRULER, J., concurs in result.

PRENTICE, J., concurs in part and dissents in part with opinion in which HUNTER, J., concurs.

PRENTICE, Justice, concurring in part and dissenting in part.

I dissent to the majority's treatment of Issue II.

The instrument which charged the habitual offender count reads as follows:

"David Lippens swears that Mickey C. McConnell a/k/a Harry Thomas a/k/a Elvin Bray a/k/a Claude Jackson late of the County and State aforesaid, on or about the 14th day of January A.D. 1981 did then and there, at and in said County and State has accumulated two (2) prior unrelated felony convictions, then and there being contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Indiana."

Just prior to the trial upon the habitual offender count Defendant moved to dismiss the charge on the ground that it was not specific enough. The trial court ruled as follows:

"THE COURT: The Court is denying that motion for the reason that the habitual charge was discussed at the time of the omnibus hearing. A purported copy of the FBI document which shows prior convictions and prior offenses charged against the Defendant was made available to defense counsel. If the specific two crimes the State intended to prove were not charged, at least that document was furnished to Mr. Skinner and I don't see how it would prejudice his defense by not dismissing it. And if the State proved two other charges rather than the one—if the State proved two other convictions rather than the ones charged, I think all the State would have to do is request that the Information be amended to conform with the evidence. I think the case law has supported that proposition." (R. at 247–48)

The record contains an order book entry of an "omnibus hearing" held December 3, 1980; however, the record does not contain a transcript of that hearing at which, according to the trial judge, Defendant was furnished with an FBI document reflecting his prior convictions and arrests. Over objection, that document was admitted into evidence as State's Exhibit 11 at the habitual offender proceeding. From Defendant's prior receipt of his "rap" sheet and his failure to move for a continuance, the majority apparently concludes that "defendant was given sufficient notice to defend himself against the habitual offender charge." But, the record shows that he received the equivalent of no notice at all.

While the habitual offender charge is not a separate offense under the penal code, it is subject to the rules governing the charging of criminal offenses. To invoke the enhanced penalty the State must charge the prior unrelated convictions " * * * on a page separate from the *rest* of the charging instrument; * * *." Ind.Code § 35–50–2–8(a) (Burns Supp.1981). (Emphasis added). Thus, the habitual offender count is part of the charging instrument. Under Ind.Code § 35–3.1–1–2(a)(4) (Burns 1979) the form of the charging instrument must contain an allegation "Setting forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition;." This statute codifies the holding in our cases that " * * * the accused has a right to have all the essential elements that enter into the offense, charged in the affidavit, so that he may know what he has to meet, whether those elements are expressed in terms in the statute or enter into the offense by construction." *Borton v. State*, (1952) 230 Ind. 679, 683, 106 N.E.2d 392, 394; *Accord McCormick v. State*, (1954) 233 Ind. 281, 285–86, 119 N.E.2d 5, 7.

The information charging habitual offender status does not comply with this requirement. It merely charges that he had accumulated two prior felony convictions and makes no allegations with respect to when they occurred or what they consisted of. He was entitled to have that information and to have the State's evidence confined thereto. *Miller v. State*, Ind., 417 N.E.2d 339, 342.

Under the now repealed habitual offender statute, Ind.Code § 35–8–8–2 (Burns 1975) the prior convictions are required to be described separately. In our cases we have adhered to this rule of specificity in order to assure that Defendants be properly apprised of the offense charged. *Goldstine v. State*, (1952) 230 Ind. 343, 351, 103 N.E.2d 438, 442; *Accord Shutt v. State*, (1954) 233 Ind. 120, 125–26, 117 N.E.2d 268, 271 (cases cited therein).

Citing *Lewis v. State*, (1975) 166 Ind.App. 553, 562, 337 N.E.2d 516, 520, the majority holds that it is sufficient if the defendant is furnished with information allowing him to reminisce through his criminal past, because he has better knowledge of that past. *Lewis* is irrelevant to the substance of an habitual offender charge. It treats the time limits upon the prosecutor's power to amend an information to add a recidivist charge under the now repealed Offenses Against Property Act, Ind.Code § 35–17–5–12(5)(h) (Burns 1975). That the time limits for charging habitual offender status are very liberal in favor of the State does not and should not alter the requirement that

the averments of the charge comply with Ind.Code § 35–3.1–1–2 and be specific enough to apprise the defendant of the charge against him.

I do not understand the majority's reference to the defendant's having made no motion for a continuance or allegation that he needed more time to investigate the charges, as I am aware of no policy in the law that excuses the State from the exactitude generally required of charging instruments upon the basis that the defendant, by sufficient effort, might become sufficiently enlightened.

Except as to its treatment of those assignments of error concerning the habitual offender count, I concur in the opinion of the majority. But for the reasons stated, I am of the opinion that the motion to dismiss the habitual offender count should have been granted; and I would remand the case with instructions to re-sentence the defendant.

HUNTER, J., concurs.