**Robert Lee HOLLEMAN, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 977S664.**

Supreme Court of Indiana.

Feb. 5, 1980.

Dennis R. Kramer, Crown Point, for appellant.

Theodore L. Sendak, Atty. Gen., William E. Daily, Asst. Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Robert Lee Holleman was charged in a two-count indictment in Lake Superior Court with first degree murder and murder during the perpetration of a robbery, Ind.Code § 35–13–4–1 (Burns 1975). He was tried to a jury, and was acquitted of first degree murder and convicted of the felony murder charge. The trial court sentenced appellant to life imprisonment. Appellant Holleman raises four issues for our consideration, each relating to the admission into evidence of two confessions: (1) whether the confessions were the product of an illegal arrest; (2) whether the confessions were tainted by a prior inadmissible confession; (3) whether appellant was denied the right to consult with an attorney; and (4) whether the confessions were the product of an illegal detention.

The facts most favorable to the State are as follows. On October 3, 1976, appellant Holleman went to the apartment of Scott Moore and Robin Opfer in Chicago. Appellant lived with Moore and Opfer in this apartment, and he spent that night there. The next morning, at approximately 9:00 a. m., Frank Love, Bobby Williams and Mike Cheatem came to the apartment. They came pursuant to a prearranged plan made with appellant to rob Scott Moore. The ostensible purpose of their coming to the apartment was the purchase of a quantity of heroin from Moore. Robin Opfer, the victim in the case before us, was not present at the time of their arrival.

Upon being admitted into the apartment, Frank Love produced a .22 caliber long-barrel pistol and announced the robbery. When Moore reached for his own gun, which was hidden under a pillow, Frank Love shot him twice in the back, wounding him fatally. When Robin Opfer returned to the apartment a short time later, appellant and his companions tied and gagged her and placed her on a mattress on the floor. The four men then sat in the apartment and talked and "shot up" some heroin. At approximately 2:00 p. m. that afternoon, Frank Love shot Robin Opfer one time in the back. This injury, however, did not prove to be fatal. Later that evening, when the victim complained of pain, appellant gave her an injection of heroin. Appellant and his cohorts stayed overnight in the apartment.

The next day, October 5, the four men remained at the apartment, contemplating their next move. Appellant again gave the victim an injection of heroin. For some unknown reason, Frank Love went into the room where Robin Opfer was being held and fired a second shot at her. However, it is unclear whether the bullet struck her. At approximately 6:00 p. m., the four men decided to leave the apartment. They obtained the keys to Moore's car, and, taking Robin Opfer with them, drove to Indiana via the Indiana Toll Road. Robin Opfer was still alive at this time. Once inside Indiana's borders, appellant and his cohorts exited from the Toll Road several times and apparently contemplated releasing Robin Opfer. The last time the group stopped, they pulled on to 108th Street near Indianapolis Boulevard in Hammond and let the victim out of the car. As she began to walk away, Frank Love approached her from be-

hind and shot her six or seven times. The results of an autopsy indicated that the victim had eight bullet wounds in her body, and that the cause of death was a gunshot wound to the thorax and a laceration of the lungs, which resulted in extensive bleeding.

The four men then went back to Scott Moore's apartment in Chicago and attempted to wipe their fingerprints off the furniture. Love, Williams and Cheatem then left the apartment. Appellant took Scott Moore's wallet and identification cards and drove Moore's car to South Bend. There he registered at the Abney Inn and contacted his brother in an attempt to fence Moore's car.

### I.

Appellant was arrested in South Bend on October 17, 1976, pursuant to a warrant charging him with an unrelated crime. Appellant does not challenge the validity of that arrest. He was detained in the St. Joseph County Jail on this and another unrelated federal charge. Appellant gave four confessions concerning the crime in question in this case. The second and third confessions were offered and admitted into evidence at trial. The first statement was given on October 18. The arrest warrant for this crime was served on appellant at the jail on October 21. Appellant asserts that the facts providing the probable cause for this arrest came from statements appellant made in this first confession. However, the trial court later determined, after a hearing on appellant's motion to suppress, that this statement was not admissible at trial. Appellant now contends that this finding rendered the arrest warrant invalid as not having been based on probable cause. Therefore, this argument runs, the subsequent confessions were tainted by an illegal arrest and were inadmissible under *Brown v. Illinois*, (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, and *Williams v. State*, (1976) 264 Ind. 664, 348 N.E.2d 623.

■ Appellant seeks to rely on the contents on the probable cause affidavit, which he has neglected to make a part of the record. Ordinarily, this would constitute a

waiver of the issue. However, since appellant did include what appears to be a true copy of the affidavit in the appendix to his brief, we will proceed to consider the issue on the merits.

■ We conclude that there was sufficient probable cause to support the arrest, even without appellant's October 18 statement. In the probable cause affidavit and at the hearing on appellant's motion to suppress, Hammond Police Detective Townsell related those facts which were known to the investigating officers before any discussions with appellant Holleman took place. The bodies of Robin Opfer and Scott Moore were found on October 6 and October 11, respectively. Both clearly appeared to have been victims of homicides. Neighbors of Moore and Opfer revealed that appellant knew them and, in fact, lived with them in Chicago. The last time any of the neighbors saw either Moore or Opfer alive was around the last time any had seen Holleman. This also coincided in time with the disappearance of Moore's car. The police had also learned that appellant had possession of Moore's car in South Bend and was attempting to fence it. Appellant told his brother at that time that the car had been stolen. Two other persons also gave statements regarding appellant's actions in disposing of the car. In addition, when appellant was arrested in South Bend on the unrelated charge, he had in his possession Moore's driver's license and two other pieces of identification belonging to Moore. Therefore, on the basis of these facts, we cannot say that, without the first confession, there was insufficient probable cause to support the arrest. *See Gaddis v. State*, (1977) 267 Ind. 100, 368 N.E.2d 244. Thus, the problems addressed by *Brown v. Illinois* and *Williams v. State*, do not arise. The subsequent confessions were not the product of an illegal arrest. *See Porter v. State*, (1979) Ind., 391 N.E.2d 801, 807.

### II.

Appellant next argues that his second and third confessions should have been suppressed as the product of the prior inadmis-

sible confession. He contends these statements were given because he had already given the first confession. He now claims that the inadmissible first statement "let the cat out of the bag" and thereby caused him to give the second and third statements. Thus, he argues, the inadmissible statement tainted the subsequent statements and rendered them inadmissible. We have faced this issue recently in *Gutierrez v. State*, (1979) Ind., 395 N.E.2d 218, 223–24:

> "We recently disposed of this argument in *Johnson v. State*, (1978) Ind., 380 N.E.2d 1236, 1241:
>
> > 'Even if the first statement had been obtained illegally, appellant's position would be incorrect. Appellant's theory is premised on the idea that once a defendant has "let the cat out of the bag," *United States v. Bayer*, (1947) 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654, any subsequent *Miranda* warnings are meaningless unless there are factors intervening which tend to show that the later confessions are voluntary, independent of the initial statement. We think this is but another way of stating the general rule that the voluntariness of any custodial statement must be determined from an examination of the totality of the facts surrounding its making. *Murphy v. State*, (1977) 267 Ind. 184, 190, 369 N.E.2d 411, 414.'
>
> Thus, the inadmissibility of the first statement does not *necessarily* taint the second statement and render it inadmissible, unless the second statement was thereby involuntarily given.
>
> .    .    .    .    .
>
> As we noted in *Johnson v. State, supra,* voluntariness is to be determined from a totality of the circumstances. In making this determination, this Court will treat the issue like any other sufficiency question. We will not reweigh the evidence; rather, we will determine only whether there was substantial probative evidence to support the trial court's finding. *Richardson v. State*, (1978) Ind., 373 N.E.2d 874, 875; *Murphy v. State, supra.*"

The evidence reveals that appellant Holleman initiated the conversation with the Hammond Police which led to the second confession. This conversation took place on October 21, 1976, three days after the inadmissible confession was given. The third confession was given five days later, on October 26. There was also evidence that appellant, in fact, hoped for leniency in exchange for these statements, and that he gave the confessions in spite of police warnings that they could not promise him anything in that regard. The police orally recited the *Miranda* warnings to Holleman, and he stated that he understood his rights. He then signed a standard waiver of rights form on each occasion prior to giving the statements. Appellant also signed each page of the written transcriptions made of those confessions. Thus, we think there was sufficient evidence to support the trial court's finding that the second and third statements were voluntarily given and were not tainted by the inadmissible confession.

### III.

Appellant further argues that the second and third confessions were obtained in violation of his Sixth Amendment right to counsel. Testimony at the hearing on the motion to suppress showed that at no time during the taking of these statements did appellant Holleman indicate that he wished to speak with an attorney. The record reveals that appellant had at least two attorneys representing him in the other unrelated charges. On several occasions around the time the confessions were given, appellant appeared with counsel in St. Joseph Superior Court concerning other matters. There is no evidence that appellant was unable to or in fact did not discuss with counsel the case now before us. Appellant never asked the officers in this case if they would contact one of the attorneys representing him in the other cases. In fact, the day of the third confession, October 26, appellant made a court appearance with counsel on another charge. Moreover, the waiver form which appellant read and

signed on October 26 stated in part: "I do not desire the services of any attorney at this time and before proceeding with the making of any statement or during the course of any conversation with any police officers, and hereby waive said right." The waiver executed on October 21 is properly to the same effect. As we noted in *Tyson v. State*, Ind., 386 N.E.2d 1185, 1188–89, whether an accused has validly waived his *Miranda* rights is determined from the totality of the circumstances. In spite of the conflicting evidence presented on this question, we think there was substantial evidence presented which supports the trial court's finding that the police did not violate appellant's right to counsel.

## IV.

Finally, appellant argues that he was illegally detained in the St. Joseph County Jail, and that this illegal detention tainted the two confessions and rendered them inadmissible. As we noted earlier, appellant Holleman was arrested in South Bend on October 17, 1976, on an unrelated charge. He was arrested on the charge we are concerned with on October 21, while still in custody. Appellant was not taken before a magistrate in Lake County concerning this charge until January 7, 1977. However, the record reveals that, between October 17 and January 7, appellant appeared in state or federal court in South Bend on ten different occasions, the last of which was a federal court trial which concluded on January 5, 1977. Appellant emphasizes that seventy-eight days elapsed between his arrest on this charge and his initial appearance before a magistrate. From this fact he argues that the confessions were a product of this detention.

In *Arch v. State*, (1978) Ind., 381 N.E.2d 465, 468, we stated that "[d]elay in presenting a defendant before a magistrate does not make a confession inadmissible as a matter of law, but is rather one factor to be considered in the question of admissibility. *Murphy v. State*, (1977) 267 Ind. 184, 193, 369 N.E.2d 411, 415." *Pawloski v. State*, (1978) Ind., 380 N.E.2d 1230, 1233.

As we discussed in Issue II above, this question must be resolved by the trial court through an examination of the totality of the circumstances. If there is substantial evidence to support the trial court's finding, that finding will not be disturbed. *Gutierrez v. State, supra; Murphy v. State, supra.*

While we agree that arrangements should have been made for a court appearance on this charge at an earlier date, we do not believe this period of detention caused the confessions to be given involuntarily. First, the confessions were given on the fourth and ninth days following appellant's arrest on the unrelated charge, not *after* the seventy-eight-day detention. Second, during that nine-day period, appellant was making four court appearances in South Bend. We cannot say the police acted unreasonably, and with an eye toward obtaining a confession at the expense of denying appellant his rights, in failing to take him before a magistrate during this nine-day period. Further, no evidence which was admitted at trial was obtained from appellant after the ninth day. Thus, he can show no prejudicial impact from the longer, more objectionable period of detention. *See Massey v. State*, (1978) 267 Ind. 504, 371 N.E.2d 703. *See also Brown v. Illinois, supra.* As we pointed out above, appellant initiated the conversation which led to the second confession, and offered to give the statements in the hope that he would be given leniency. A consideration of all of the evidence recited above leads us to conclude that the trial court properly admitted the confessions into evidence. There was sufficient evidence to support the court's conclusion that the confessions were voluntarily given and were not the product of an illegal detention. *Arch v. State, supra.*

Finding no reversible error, we affirm the judgment of the trial court.

All Justices concur.