Anthony J. GRAY–BEY, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 95–3589.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1997.

Decided Sept. 8, 1998.

---

Allen E. Shoenberger, Jesse Boggs, Law Student (argued), Loyola University School of Law, Chicago, IL, for Petitioner–Appellant.

William J. Lipscomb (argued), Office of the United States Attorney, Milwaukee, WI, for Respondent–Appellee.

Before COFFEY, EASTERBROOK and DIANE P. WOOD, Circuit Judges.

COFFEY, Circuit Judge.

On February 14, 1990, the defendant-appellant, Anthony Gray–Bey ("Gray–Bey"), was indicted on federal charges of conspiring to distribute cocaine in violation of 21 U.S.C. § 846, possessing cocaine with an intent to distribute in violation of 21 U.S.C. § 841(a)(1), using a telephone to facilitate drug trafficking in violation of 21 U.S.C. § 843(b), and using a firearm during drug trafficking in violation of 18 U.S.C. § 924(c). On August 27, 1990, Gray–Bey was convicted on each of the six counts and sentenced to 256 months incarceration. This Court affirmed the conviction and sentence of Gray–Bey in *United States v. Goines, et al.,* 988 F.2d 750 (7th Cir.1993), on March 17, 1993.

On February 10, 1995, more than four years after the trial and sentencing proceedings in *Goines,* *Goines* co-defendant Gray–Bey filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 with the district court, seeking an order vacating his judgment of conviction and sentence. Gray–Bey asserts that his conviction violated his Sixth Amendment right to effective assistance of counsel because his attorney in the fifteen co-defendant trial matter entitled *United States v. Goines* labored under an actual conflict of interest that adversely affected her performance at trial.[1] Gray–Bey also filed a supplemental section 2255 petition challenging the sentence imposed. Gray–Bey specifically contends that he was denied effective assistance of counsel because his attorney failed to object to the finding in his presentence report that Gray–Bey was responsible for the entire quantity of cocaine

distributed during the course of the conspiracy. The trial judge denied Gray–Bey's petition and he appeals. We affirm.

## BACKGROUND

In 1988, officers of the Milwaukee Police Department, together with agents from the Drug Enforcement Agency, began investigating the activities of a drug trafficking operation associated with a gang known as the Brothers of Struggle. The operation was led by Sterling Daniels ("Daniels"), along with his brother, Michael, the defendant-appellant Gray–Bey, and Bernard Goines ("Goines"). At approximately 3:00 a.m. on November 2, 1989, Daniels, Goines, and Daniels's girlfriend, Lexandria Spinks ("Spinks"), drove from Milwaukee to Kankakee, Illinois, to meet Gray–Bey. After arriving in Kankakee, Daniels, Goines and Spinks checked into a hotel. The next morning, the three drove to Gray–Bey's house in Kankakee. That evening, Spinks and Daniels prepared to return to Milwaukee. At that time, Gray–Bey told Spinks that he and his wife were planning to be in Milwaukee later the same week and offered to lend his automobile to Spinks so that she could drive to Milwaukee and use the vehicle until Gray–Bey arrived. Spinks accepted Gray–Bey's offer and drove the automobile to Milwaukee. Upon her arrival, Spinks received a telephone call from Daniels who informed her that someone would pick up the car and that a quantity of Daniels's cocaine was hidden in the trunk. Milwaukee police, who had been observing this drug trafficking operation for over a year, received an anonymous telephone tip the evening that Spinks returned to Milwaukee that a vehicle matching the description of Gray–Bey's automobile would be transporting cocaine in the city. After police located Gray–Bey's car, they requested and received Spinks's consent to search the vehicle and thereafter discover-

---

1. Specifically, Gray–Bey contends that the attorney who represented him in the *Goines* matter, Patricia Bender, labored under a conflict of interest because Ms. Bender allegedly was a law partner with Gray–Bey's former attorney, Earl Washington, and Mr. Washington had previously represented one of the other *Goines* co-defendants, Lexandria Spinks, in an unrelated matter. In the *Goines* case, Ms. Spinks testified at trial

against Gray–Bey. Gray–Bey contends that because Ms. Bender and Mr. Washington did not wish to harm the defense of their former client, Ms. Spinks, Ms. Bender failed to rigorously cross-examine Ms. Spinks at trial. Gray–Bey further alleges that Ms. Bender refused to call several witnesses to the stand to refute Ms. Spinks's testimony.

ed more than one and one-half kilos of cocaine in the trunk. Spinks was arrested for possession of narcotics and Gray–Bey's car was seized. Spinks provided police with a statement detailing her activities in Kankakee and Milwaukee during the twenty-four hours prior to her arrest. Specifically, she told police that while at Gray–Bey's house, she had observed Daniels, Gray–Bey, and six other men cutting up a kilo of cocaine. After Spinks was released on bond, Milwaukee police officers, based on the information they had received from Spinks, applied for and received a court order for permission to place a wiretap on two telephone lines in Daniels's home. In the meantime, Gray–Bey retained the services of an attorney, Earl Washington ("Washington"), to recover his automobile, which the police had seized at the time of Spinks's arrest and were seeking to gain ownership of through a forfeiture action. Washington also represented Spinks in her drug possession suit.

On January 12, 1990, through the vehicle of the wiretap, police learned that Daniels had arranged to purchase six ounces of cocaine from his former girlfriend, Debra Henry ("Henry"). Daniels and Gray–Bey arrived at Henry's house in Milwaukee, where they were ultimately arrested and charged with conspiring to possess and distribute cocaine and using firearms in relation to a drug trafficking crime.

On February 14, 1990, Gray–Bey was charged with six counts of a thirty-six count indictment. Gray–Bey was represented by Washington during the indictment proceedings, as well as during the automobile forfeiture action. Prior to trial, however, Washington withdrew as Gray–Bey's counsel, and attorney Patricia Bender ("Bender") was substituted.

At trial, the Government revealed that Gray–Bey had implicated himself during the course of the conspiracy in wiretapped telephone conversations with Daniels. For example, Gray–Bey called Daniels on two separate occasions to discuss the status of the six-ounce cocaine sale. In addition, Spinks testified that while at Gray–Bey's house, she had observed Gray–Bey cutting a kilo of cocaine. The transcripts of the police wiretaps of Dan-

iels's telephone lines, which were received in evidence, also revealed that after Gray–Bey learned that Spinks had given a statement to the officers following her arrest, he called Daniels, complaining that both of them had been implicated by Spinks in the Kankakee deal.

Some six months later, on August 27, 1990, Gray–Bey was convicted of conspiring to distribute cocaine, possessing cocaine with an intent to distribute, using a telephone to facilitate drug trafficking, and using a firearm during drug trafficking and sentenced to 256 months incarceration. In determining Gray–Bey's sentence, the trial court relied on a presentence report stating that Gray–Bey, in furtherance of the conspiracy, was responsible for distributing between fifteen and fifty kilos of cocaine.

On February 10, 1995, Gray–Bey filed a petition seeking an order vacating his judgment of conviction and sentence, pursuant to 28 U.S.C. § 2255. The denial of Gray–Bey's petition is the basis of his most recent appeal. In his petition, Gray–Bey asserted that his conviction violated his Sixth Amendment right to effective assistance, alleging that his counsel, Bender, labored under an actual conflict of interest that adversely affected her performance at trial. Gray–Bey contends that because his attorney was associated with or in partnership with his former attorney, Washington, his attorney's (Bender's) representation of him was orchestrated by Washington and thus Bender labored under a conflict of interest due to Washington's prior representation of Spinks. In an affidavit filed with the trial court, Bender affirmed that she was neither a partner of nor associated with Washington during the trial and that her representation of Gray–Bey was free of any conflict. Specifically, Bender alleged:

4. That at no time did affiant ever represent codefendants Lexandria Spinx [sic], or Sterling Daniels.

5. That affiant's representation of Gray was at his request and consent.

6. That affiant was not an associate or partner of attorney Earl Washington, during the course of the trial; that the affiant shared office space with attorney Washing-

ton, during the appellate preparation; that Gray was so advised.

7. That affiant perceived no circumstances to suggest a conflict of interest which would render Gray ineffective assistance of counsel, on either the trial or appellate level.

8. That affiant was totally loyal to the representation of Anthony Gray, without interest as to any other co-defendant or unindicted coconspirator.

9. That affiant and defendant conferred extensively in regards to trial strategy and issues to be raised on appeal; that at no time did Gray ever express any dissatisfaction with affiant's representation; that affiant recently became aware of Gray's allegations of conflict and ineffective assistance.

On September 28, 1995, the trial court issued an order denying Gray–Bey's petition, finding that Gray–Bey had failed to adduce facts sufficient to support his contention that Bender labored under a conflict of interest. The court ruled that "[t]he record does not allow the court to assess either the relationship of Ms. Bender and Mr. Washington or the involvement of Mr. Washington in Mr. Gray–Bey's defense." The defendant also filed a motion to supplement his section 2255 petition, contending that Bender's failure to object to the *Goines* court's consideration of the presentence report caused the *Goines* court to overstate the quantity of cocaine that Gray–Bey was responsible for within the conspiracy. On September 28, 1995, the trial judge denied Gray–Bey's petition.

## ISSUES

On appeal, the defendant contends that the trial court erred in finding that Gray–Bey failed to set forth facts sufficient to demonstrate a causal connection between an alleged deficiency in his trial counsel's performance and his counsel's alleged conflict of interest. The defendant also argues that he was denied effective assistance of counsel because at sentencing, his counsel did not object to the finding in the presentence report that Gray–Bey was responsible for the entire quantity of narcotics distributed over the length of the conspiracy, a finding that was

ultimately adopted by the trial court. Finally, Gray–Bey contends that his conviction for using a firearm during a drug trafficking violation was improper because it was not supported with sufficient evidence at trial.

## DISCUSSION

In considering a district court's decision denying a petition for a writ of habeas corpus under 28 U.S.C. § 2255, we apply the *de novo* standard of review. *See Montgomery v. Greer*, 956 F.2d 677, 680 (7th Cir.1992), *cert. denied*, 506 U.S. 972, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992). When reviewing a trial court's findings of fact in denying such petitions, we apply the clearly erroneous standard. *See Small v. Endicott*, 998 F.2d 411, 414 (7th Cir.1993).

### A. The Conflict of Interest

Initially, the defendant contends that the district court erred in finding that Gray–Bey failed to raise facts sufficient to support a causal connection between an alleged deficiency in his trial counsel's performance and his counsel's alleged conflict of interest. Gray–Bey argues that he is entitled to a new trial because the alleged conflict of interest he perceived denied him effective assistance of counsel.

After Spinks was arrested by Milwaukee police officers and charged in Milwaukee County Circuit Court with possession of the one and one-half kilos of cocaine, the authorities also brought separate proceedings to forfeit Gray–Bey's car. Attorney Washington represented Spinks in her state court criminal action and Gray–Bey in the separate automobile forfeiture action. The following February, Gray–Bey was charged in a thirty-six count federal indictment with conspiring to distribute cocaine and using and carrying firearms during the conspiracy. At his initial appearance on this charge, Gray–Bey was represented by Washington. After Gray–Bey's arraignment, Washington withdrew and Attorney Bender was substituted as Gray–Bey's lawyer. At trial, Spinks was cross-examined by the prosecutor, as well as by Gray–Bey's retained counsel, Bender. Spinks's testimony incriminated Gray–Bey in

the possession of the cocaine found in Gray–Bey's car. Gray–Bey asserts that Bender and Washington were law partners and that Bender "held back" in her defense of Gray–Bey in order to avoid harming the defense of Washington's former client, Spinks. Specifically, Gray–Bey alleges that Bender failed to rigorously cross-examine Spinks and failed to present defense witnesses to contradict Spinks's testimony.

In rejecting Gray–Bey's asserted conflict of interest claim, the judge assumed that Attorneys Bender and Washington were associated in the practice of law, and that a *potential* for a conflict of interest existed. The district judge ruled that Gray–Bey had failed to allege facts which, if proven, could demonstrate a rational, causal connection between the alleged conflict and a deficiency in Bender's performance. The judge found that "Mr. Gray–Bey has not shown that Ms. Bender or Mr. Washington could have had any pecuniary interest in future business with Ms. Spinks. Nor does Mr. Gray–Bey state how Mr. Washington's possible knowledge of privileged information could have affected either his own or Ms. Bender's performance." We agree with the trial court's findings.

According to the Model Code of Professional Responsibility:

> The professional judgment of a lawyer should be exercised, within the bounds of law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interest of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

Canon 5–1 (1980). "The Code's prohibition focuses on the relationship between the clients, that is differing interests which may affect the independence of the attorney's professional judgment." Mallen and Levit, *Legal Malpractice* 241 (2d ed.1981). This Court has held that a conflict of interest arises when a defense attorney is "required to make a choice advancing his own interests to the detriment of his client's interests." *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir.1988). In *Horton*, the defendant, convicted of distributing cocaine, argued that

an irreconcilable conflict of interest existed between him and his court-appointed attorney at trial. *See id.* at 1415. According to the defendant, his attorney, who had been recently referred to as a possible candidate for United States Attorney, advised him to plead guilty in order that the attorney might curry favor with the Government and further his candidacy. *See id.* at 1419. This Court held that "[t]hough it is conceivable that an unprincipled defense attorney in line for a job as United States Attorney might encourage a defendant in some circumstances to plead guilty in order for counsel to curry favor with his or her future employer, that is too fanciful upon which to base a *per se* rule of conflict." *Id.* at 1419–20. The Court continued: "a candidate for a high federal position in his professional field would not advance his own interests by demonstrating that he is a weak or unskilled attorney on behalf of his client's interests." *Id.* at 1420. Similarly, in *Holloway v. Arkansas,* 435 U.S. 475, 483–84, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978), a single public defender represented three co-defendants at the same trial. The trial court refused to consider the appointment of separate counsel for each defendant despite the defense lawyer's timely and repeated assertion that the interests of his clients conflicted. *See id.,* 435 U.S. at 481–82, 98 S.Ct. at 1177. The Supreme Court recognized that a lawyer forced to represent co-defendants whose interests conflict could not provide adequate legal assistance. *See id.*

■ In order for a defendant to establish that he was denied effective assistance of counsel, he must demonstrate how an alleged "conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). In *Cuyler,* two privately retained lawyers represented the defendant and two others charged with the same murder. *See id.,* 446 U.S. at 337, 100 S.Ct. at 1712. During the defendant's trial, the defense rested following the close of the prosecution's case, without presenting any evidence. *See id.,* 446 U.S. at 338, 100 S.Ct. at 1712. The defendant refused to testify even though the prosecution had presented a very

weak case. *See id.* The defendant was later convicted, and contended that his lawyer's multiple representation of clients amounted to ineffective assistance of counsel. The Supreme Court held that the *mere possibility of a conflict of interest* arising from multiple representation was insufficient to establish a claim of ineffective assistance of counsel. *See id.,* 446 U.S. at 350, 100 S.Ct. at 1719. Under *Cuyler,* in order to prove a claim of ineffective assistance of counsel, a defendant is required to demonstrate both "an actual conflict of interest" and an adverse impact on the lawyer's performance in the defense of his client. *See Cerro v. United States,* 872 F.2d 780, 785–86 (7th Cir.1989). This "adverse effect" occurs when "an attorney's actual conflict of interest *causes a lapse in representation contrary to the defendant's interests....*" *Stoia v. United States,* 22 F.3d 766, 771 (7th Cir.1994) (citation and internal quotation omitted) (emphasis added).

▮▮▮ Under this Court's holding in *Prewitt v. United States,* 83 F.3d 812, 819 (7th Cir.1996), a section 2255 petition must be accompanied by "a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." Although the defendant Gray–Bey alleged that Bender and Washington were law partners at the time of his trial, a circumstance sufficient to give rise to the potential for a conflict of interest, there is nothing in the record to demonstrate that such a conflict existed in this case. To the contrary, Bender's affidavit makes clear that she and Washington only *shared office space* and were *neither law partners nor associates* at the time of Gray–Bey's trial.[2] Specifically, the affidavit provided that Bender "was not an associate or partner of attorney Earl Washington, during the course of the trial; that the affiant shared office space with attorney Washington, during the appellate preparation; that Gray was so advised." Gray–Bey failed to show that Bender or Washington had any specific interest in future business with Spinks, nor does Gray–Bey state how Washington's possible knowledge of privileged information concerning Spinks could have affected either his or Bender's performance. Thus, we are of the opinion that Gray–Bey has failed to demonstrate specifically, under *Horton,* that the alleged association between Bender and Washington gave rise to a conflict of interest and that Bender advanced her interests to the detriment of her client's interests.

Furthermore, Gray–Bey failed to state in his petition that Bender's alleged conflict of interest with Gray–Bey compromised Bender's performance. Gray–Bey merely alleges that Bender failed to properly cross-examine Spinks. As the Government points out, this Court

> is left to guess at how Attorney Bender's trial performance, and specifically her cross examination of Spinks, was deficient. What questions did Attorney Bender ask that she shouldn't have asked? What questions did Attorney Bender fail to ask that she should have asked? What affirmative evidence did Attorney Bender fail to present in Gray's defense that she should have presented to contradict Spinks? What confidences had Attorney Bender learned through her association with Attorney Washington that she failed to use in cross examination of Spinks? Gray simply doesn't say.

Gray–Bey failed to demonstrate an adverse effect resulting from the alleged conflict, and adduced no evidence that would demonstrate a "lapse in representation contrary to the defendant's interests." *Stoia,* 22 F.3d at 771. Thus, Gray–Bey has failed to establish either the existence of an actual conflict of interest, or that he suffered an adverse effect as a result of the alleged conflict.

Gray–Bey cites two cases in support of his position, but both are distinguishable. In *United States v. Gaines,* 529 F.2d 1038 (7th Cir.1976), this Court held that a conflict of interest existed in a case in which the defendant's counsel refused to allow the defendant to rebut his own oral confession, for fear of

---

**2.** Furthermore, there is nothing in the record that establishes that Bender and Washington engaged in practices that are typical of partnership relationships, such as paying rent for their shared office space jointly, commingling client revenues, or routinely representing common clients.

incriminating two other defendants represented by counsel's associate. Similarly, in *Ross v. Heyne*, 638 F.2d 979 (7th Cir.1980), the defendant's counsel refused to cross-examine a witness represented by counsel's law partner in order to avoid revealing that the witness had been promised consideration in return for his testimony. The Court held that such a deficiency constituted ineffective assistance of counsel. In each of these cases, the court record included facts sufficient to demonstrate a rational, causal connection between the alleged conflict and the deficient performance of counsel. On the contrary, Gray–Bey has failed to allege facts, either before the trial court or now this Court on appeal, that would amount to a deficiency in trial counsel's performance.

■ Alleging that he and Spinks were co-defendants in the same case, Gray–Bey also argues that Bender's representation violated Rule 44(c) of the Federal Rules of Criminal Procedure, which prohibits attorneys "who are associated in the practice of law" from representing co-defendants in the same trial when the duty of representing one may conflict with the duty of representing the other. Rule 44(c), however, does not apply to the situation under consideration because Gray–Bey and Spinks were not defendants in the same case. Nor has he offered convincing proof that Bender and Washington were "associated in the practice of law" under Rule 44(c).

In summary, to establish a claim of ineffective assistance of counsel, a defendant, under the *Cuyler* standard, must allege facts sufficient to demonstrate a rational, causal connection between an existing actual conflict of interest and an adverse effect in counsel's representation contrary to the defendant's interests. Gray–Bey has not only failed to demonstrate that an actual conflict of interest exists, but he has also failed to adduce facts demonstrating a rational, causal connection between the alleged conflict and Bender's allegedly deficient performance. The trial judge did not commit error in finding that Gray–Bey failed to demonstrate that his counsel's performance was deficient.

**B.  Counsel's Failure to Object to Drug Quantities**

■ The defendant next contends that he was denied effective assistance of counsel at sentencing and that this denial ultimately led to a sentencing error on the part of the trial court. Specifically, Gray–Bey argues that his counsel failed to properly object to a finding in the presentence report that Gray–Bey was responsible for between fifteen and fifty kilos of cocaine. This finding was ultimately adopted by the trial court and formed the basis of the court's determination that Gray–Bey's base offense level was 34. The amount of cocaine listed in the presentence report was derived from the total amount of cocaine distributed over the entire course of the conspiracy. On appeal, Gray–Bey argues that he should have been found responsible only for the one and one-half kilos of cocaine found in his car and the six-ounces from the transaction involving Daniels and Henry. Thus, Gray–Bey argues that he should have been found responsible purely for the cocaine that was directly attributable to him and not the cocaine distributed by his co-conspirators.

■ However, the law of this circuit, which dictates that a defendant in a drug conspiracy is responsible not only for the drugs with which he was directly involved *but also for any drugs reasonably foreseeable in connection with the criminal conduct that he agreed to undertake in furtherance of the conspiracy while he was a member of the conspiracy,* flies in the face of Gray–Bey's argument that he should be liable for only the cocaine directly attributable to him. *See Nichols v. United States*, 75 F.3d 1137, 1141 (7th Cir.1996) (citing U.S.S.G. § 1B1.3(a)(1)). A defendant is responsible for the acts of his coconspirators if those acts: *1) were reasonably foreseeable to the defendant; and 2) were in furtherance of the conspiracy. See Pinkerton v. United States*, 328 U.S. 640, 646, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). The rule in *Pinkerton,* known as the "aggregation rule," allows the district court to "aggregate all the quantities of drugs involved in an entire, basic scheme of multiple defendants when it determines an individual defendant's base offense level." *United*

*States v. Taylor,* 72 F.3d 533, 547–48 (7th Cir.1995) (citations and internal quotations omitted). This Court has repeatedly adopted the Supreme Court's *Pinkerton* standard. For example, in *United States v. Tolson,* 988 F.2d 1494, 1503 (7th Cir.1993), the defendant was arrested for distributing 358 pounds of marijuana, but was later convicted by the trial court for being part of a conspiracy that distributed between 3,000 and 4,000 pounds of marijuana. This Court, implicitly adopting the *Pinkerton* rule, held that the amount of narcotics considered in sentencing a co-conspirator for a given conspiracy includes "not only the amount involved in the transactions ... but also those that were reasonably foreseeable, reflecting the fact each conspirator is responsible for the acts and offenses of each one of his co-conspirators committed in the furtherance of the conspiracy." *Id.* at 1502 (citation and internal quotation omitted). In affirming the trial court's conviction, the Court concluded that the defendant was "not hired to help off-load a single shipment [of marijuana] but was an active participant in the drug conspiracy. He aided in harvesting and transporting three or four loads of marijuana, was present at another delivery ... and knew of other conspirators involved." *Id.* at 1503 (internal quotation omitted). Similarly, in *United States v. Price,* 988 F.2d 712, 721 (7th Cir.1993), the defendant was indicted for distributing 100 kilos of marijuana, but was later convicted by the trial court for distributing 681 kilos, as part of a conspiracy. We held that defendants are liable "for the entire quantity of drugs involved in a drug conspiracy ... [when] the defendants were substantially involved in the conspiracy and knew or reasonably should have known of the quantity of drugs handled by the conspiracy." *Id.* (citation and internal quotation omitted). This Court affirmed the trial court's findings that the defendant was a *"leader and/or organizer of the drug conspiracy"* and that he was "responsible for the entire 681 kilos of marijuana involved in the conspiracy because [he] knew of or reasonably should have known of the extent of the conspiracy *he helped lead."* *Id.* (emphasis added). Finally, in *United States v. Edwards,* 115 F.3d 1322, 1325 (7th Cir.1997), the defendant was found liable for

distributing forty-seven kilos of heroin, the entire quantity of drugs attributable to the conspiracy of which he was a part. In affirming the trial court's conviction, we held that the defendant's

> actual participation [in the conspiracy] (answering telephone, taking drug orders and referring buyers to the independent contractors, delivering and selling drugs, as well as occasionally picking up drug shipments and preparing packages for sale) in [the] drug trafficking conspiracy went well beyond that of a simple buyer-seller relationship. The full activities of the drug conspiracy were not only reasonably foreseeable to [the defendant], but were also performed in furtherance of the jointly undertaken criminal activity and advanced an objective within the scope of the conspiracy that he joined.

*Id.* at 1327. *See also United States v. Magana,* 118 F.3d 1173, 1206 (7th Cir.1997) (holding that defendant is liable for entire quantity of drugs attributable to conspiracy in circumstances where defendant is one of conspiracy's central figures).

In the case under consideration, Gray–Bey's contention that the amount of cocaine distributed by his co-conspirators was not foreseeable to him runs counter to the recorded conversations between Daniels and Gray–Bey which demonstrate that Gray–Bey was actively involved in the conspiracy leadership since the earliest days of the group's drug dealing. *See Goines,* 988 F.2d at 765–66. "In a wiretapped phone conversation on January 18, 1990, Gray reveals the long-standing nature of his drug dealing relationship with [Daniels]. They discussed the old days, with Gray reminiscing that things ran more smoothly when [Daniels] exerted greater control over the conspiracy...." *Id.* at 765. The *Goines* Court continued: "[b]y his own words, Gray conspired to distribute cocaine with [Daniels] for years." *Id.* at 766. Thus, under this Court's rule in *Tolson,* because Gray–Bey was "an active participant in the drug conspiracy" and "knew of other conspirators involved," the sale of several more kilos of cocaine by other members of the conspiracy was reasonably foreseeable. As in *Price,* Gray–Bey "knew of or reason-

ably should have known of the extent of the conspiracy *he helped lead.*" Thus, it was proper for the trial court to find that Gray–Bey was responsible for the total sum of cocaine distributed by the conspiracy: between fifteen and fifty kilos.

Despite the weight of law to the contrary, Gray–Bey maintains that he should not reasonably have been held accountable for the total amount of cocaine attributable to the conspiracy. Specifically, Gray–Bey argues that both his guideline sentence, as well as his mandatory minimum term, were adversely affected by his counsel's deficient performance in failing to object to the findings in the presentence report that Gray–Bey was responsible for between fifteen and fifty kilos of cocaine and that his base offense level and sentence should have been substantially reduced given his responsibility only for the lesser amounts of cocaine.

The trial court responded to Gray–Bey's contention that his counsel's performance was deficient by noting that "[u]nder *Strickland,* the petitioner must show that counsel's performance was deficient as measured by an objective standard of reasonable effectiveness and that he was prejudiced as a result." Gray–Bey has neglected to point out how his counsel's failure to make the objection was a deficiency in performance.

■ To obtain relief on a claim of ineffective assistance of counsel, Gray–Bey was required to demonstrate in the trial court that he was prejudiced by his counsel's deficient performance. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to demonstrate prejudice, Gray–Bey was required to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068. Gray–Bey failed to establish how his counsel's failure to object to the drug quantity used by the trial court at sentencing constituted deficient performance. Gray–Bey failed to adduce any evidence to demonstrate that he was responsible for any less than the full fifteen kilos of cocaine.

Gray–Bey also presented no evidence to satisfy *Strickland's* requirement that he demonstrate that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

In summary, this Circuit's law, that a defendant is responsible for the acts of his co-conspirators so long as those acts were reasonably foreseeable and were made in furtherance of the conspiracy, is clear. Under this Court's holding in *Tolson* and *Price,* the distribution of between fifteen and fifty kilos of cocaine was certainly foreseeable because it was in furtherance of Gray–Bey's role as a leader in the drug trafficking conspiracy. Furthermore, the defendant has failed to provide evidence sufficient to demonstrate that, under *Strickland,* he was prejudiced by his counsel's failure to object to the findings of the presentence report. The defendant has failed to establish that, but for his counsel's unprofessional errors, the result of the proceeding would have been any different.

### C. The Defendant's Bailey Challenge

■ In the defendant's supplemental habeas corpus petition and during trial, Gray–Bey argued that his trial counsel's performance at sentencing was deficient because she failed to object to the court's consideration of his co-defendants' use of firearms. Gray–Bey argued that his co-defendants' use of firearms was not foreseeable to him, and therefore, the evidence presented by the Government did not support a conviction under 18 U.S.C. § 924(c). The trial court rejected Gray–Bey's claim because Gray–Bey did not state why his co-defendants' use of firearms was not foreseeable.

On appeal, Gray–Bey fails to further address this "foreseeability" issue and instead contends for the first time that the Government failed to show an "active employment" of a firearm by the defendant, as required in demonstrating a defendant's use of a firearm under 18 U.S.C. § 924(c), pursuant to the Supreme Court's recent decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). However, the defendant's *Bailey* argument is not the same as the "foreseeability" issue raised during trial proceedings. "It is axiomatic that an issue not first presented to the district court may not be raised before the appellate court as a

ground for reversal." *Christmas v. Sanders,* 759 F.2d 1284, 1291 (7th Cir.1985) (citation omitted). This is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).

Under this Court's holding in *Sanders,* because Gray–Bey failed to raise his *Bailey* claim before the trial court, he cannot raise it before this Court.

### CONCLUSION

The trial court did not commit error in finding that Gray–Bey had failed to set forth facts showing a causal connection between an alleged deficiency in his trial counsel's performance and his counsel's alleged conflict of interest. In addition, the trial judge did not err in finding that Gray–Bey failed to establish that his trial counsel's failure to object to drug quantities at sentencing was prejudicial. Finally, Gray–Bey's failure at trial to raise a *Bailey* challenge to his conviction for using a firearm during a drug trafficking violation precludes appellate review of this issue.

AFFIRMED.