Robert Lee HOLLEMAN, Petitioner

v.

Charles MILLER, Respondent.

No. 3:95CV0123RM.

United States District Court,
N.D. Indiana,
South Bend Division.

May 8, 2000.

Robert Lee Holleman, Pendleton, In, pro se.

David J Bradford, David C Layden, Jenner and Block, Chicago, IL, for Robert Lee Holleman.

James B Martin, Barbara Gasper Hines, Indiana Attorney General, Indianapolis, IN, for Charles Miller.

## MEMORANDUM AND ORDER

MILLER, District Judge.

In 1981, Robert Lee Holleman filed his first petition for writ of habeas corpus addressed to his 1977 conviction and life sentence for felony murder. *Holleman v. State*, 272 Ind. 534, 400 N.E.2d 123 (Ind. 1980). The denial of that petition was affirmed on appeal. *Holleman v. Duckworth*, 700 F.2d 391 (7th Cir.1983). In 1995, Mr. Holleman filed a second [1] habeas corpus petition, which was denied as an abuse of the writ. The court of appeals reversed and remanded for an evidentiary hearing to determine facts pertinent to whether the 1995 petition constitutes an abuse of the writ. *Holleman v. Duckworth*, 155 F.3d 906 (7th Cir.1998). The court conducted the evidentiary hearing on May 5, 2000,[2] and, based on the facts set forth below and the reasons set forth below, again concludes that Mr. Holleman's 1995 petition must be denied as an abuse of the writ.

The facts are largely undisputed. Mr. Holleman and Frank Love were among four people charged with the 1976 murder of Robin Opfel in 1976. Lake County Superior Court Judge James Clement, to whom the case was assigned, appointed attorney Stanley Jablonski to represent Mr. Holleman, and appointed attorney James Frank to represent Mr. Love. Near the time of his arrest, Mr. Holleman gave

---

1. Mr. Holleman also had filed two intervening petitions in the Southern District of Indiana related to the handling of his state post-conviction relief petition. Those intervening petitions were denied without prejudice, and the State does not rely on those petitions in its defense of this petition.

2. The remand triggered a new but imperfect procedure in the district court. The court had adopted a standing order under which a case would be reassigned to the other active judge in the district when the judge to whom the case originally was assigned could not hear the case; the appellate court's choice to apply Circuit Rule 36 on remand triggered that procedure. The standing order did not provide for notice to the judge to whom the case was reassigned, though, so this case languished far longer than it should have while awaiting the ordered hearing. The court extended its apologies to Mr. Holleman at the evidentiary hearing, and renews those apologies. Regardless of his right to habeas relief, he should not have had to wait so long for the hearing the appellate court ordered.

statements to police incriminating himself and naming Mr. Love as the actual shooter.

Mr. Love's trial was scheduled first, but the prosecution dismissed the charge against Mr. Love, without prejudice, on February 7, 1977, the scheduled trial date. Mr. Frank had persuaded the prosecutor that Mr. Love was in South Bend when Mr. Holleman said Mr. Love was shooting Robin Opfel. Mary Schaar, a nurse at a South Bend medical facility supported Mr. Love's alibi, as Mr. Frank had told the prosecutor she would; Mr. Frank had filed a notice of alibi that included Ms. Schaar's name. The prosecution's motion to dismiss explained simply that, "The State has reviewed its evidence in the case against Frank Love and determined that it has insufficient evidence to sustain a successful conviction at this time."

A conflict arose between Mr. Holleman and Mr. Jablonksi. Judge Clement granted Mr. Jablonski's motion to withdraw on May 19, 1977, after denying in part a motion to suppress Mr. Holleman's statements to police. Mr. Holleman had filed a *pro se* motion for a speedy trial on March 21, 1977. At an unrelated hearing not attended by Mr. Holleman, Judge Clement asked Mr. Frank whether there would be any conflict if Mr. Frank represented Mr. Holleman, and Mr. Frank said he saw none (Mr. Frank believes Judge Clement chose him because he knew the facts of the case and a speedy trial demand had been made). Judge Clement appointed Mr. Frank to represent Mr. Holleman as co-counsel during the pendency of the suppression motion that Mr. Jablonski had prepared. When the suppression motion was decided and Mr. Jablonski's withdrawal motion was granted, Mr. Frank moved to allow Mr. Holleman to act as co-counsel; the court granted that motion, but Mr. Holleman did not speak a word on the record during his trial.

By the time his trial began on May 23, 1977, Mr. Holleman knew that the Love case had been dismissed, and that Mr. Frank had represented Mr. Love. He didn't know what had led to the dismissal.

Mary Schaar was a surprise prosecution witness in Mr. Holleman's trial, apparently called to cast doubt on the part of Mr. Holleman's statements that attributed the shooting to Mr. Love. Mr. Frank objected unsuccessfully on relevancy grounds. Mr. Frank did not cross examine Ms. Schaar; he feared that if he impugned her credibility, the prosecution might take a fresh look at Mr. Love, whom it was free to recharge. Ms. Schaar was among several witnesses not cross examined, but was the only witness unexamined because of Mr. Frank's divided loyalties. Mr. Holleman did not know of the role Ms. Schaar had played in the events leading to the dismissal of the charge against Mr. Love. Mr. Holleman's jury also learned during the trial of the dismissal of the charge against Mr. Love.

The jury found Mr. Holleman not guilty of murder, but found him guilty of murder in the perpetration of a robbery. Mr. Holleman appealed, represented by Dennis Kramer, another public defender. Mr. Holleman sent Mr. Frank two letters to discuss appellate issues; in response to the second, Mr. Frank told Mr. Holleman that further correspondence should be directed to Mr. Kramer. Mr. Holleman told Mr. Kramer in a letter that he thought there was something wrong in Mr. Frank having represented him after representing Mr. Love. Mr. Kramer responded, "According to my interpretation of your letter of August 21, 1977, you believe your attorney, James Frank, was competent except for having represented Frank Love earlier. Therefore, I will not file any additional papers alleging any incompetency of counsel."

The Indiana Supreme Court affirmed Mr. Holleman's conviction in February 1980. *Holleman v. State*, 272 Ind. 534, 400 N.E.2d 123 (1980). In 1981, Mr. Holleman filed his first federal habeas corpus petition and a state petition for post-conviction

relief. This court denied the habeas petition, and the Seventh Circuit affirmed. *Holleman v. Duckworth,* 700 F.2d 391 (7th Cir.1983).

Mr. Holleman's petition for post-conviction relief moved slowly in the state court. Pursuant to the state rules, his petition was referred to the state public defender's office. By 1989, when he first met with deputy state public defender Jeffrey Evans, Mr. Holleman had seen appearances entered by several deputy state public defenders assigned to his case, but Mr. Evans was the first to meet with him. At the end of an interview with Mr. Evans, Mr. Holleman mentioned his concern about Mr. Frank having represented Mr. Love.

Mr. Evans tracked down Mr. Frank, who by then had left the practice of law, and presented Mr. Frank's testimony at an evidentiary hearing in February 1992 on an amended petition for post-conviction relief. Mr. Frank conceded his inability to cross examine Ms. Schaar for fear of jeopardizing Mr. Love's dismissal. The magistrate hearing the case inquired what line of inquiry Mr. Frank might have pursued had he not felt so constrained, and Mr. Frank could not identify any.

The superior court denied Mr. Holleman's post-conviction relief petition, and the Indiana Court of Appeals affirmed. The court of appeals decided that although Mr. Frank had served under a conflict of interest, the conflict was harmless because he "was convicted only of the crime to which he confessed." *Holleman v. State,* 641 N.E.2d 638, 641 (Ind.Ct.App.1994). Mr. Holleman then filed this petition for writ of habeas corpus.

■ Mr. Holleman originally raised several issues in this petition, but his arguments about Mr. Frank's conflict of interest are all that remain. He contends that his trial court did not conduct an adequate inquiry into Mr. Frank's potential conflict of interest of which the court was aware.[3] Under such circumstances, courts presume prejudice upon a showing of possible prejudice, and the habeas petitioner need not show actual prejudice. *Holloway v. Arkansas,* 435 U.S. 475, 484–491, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Alternatively, Mr. Holleman argues that Mr. Frank actively represented conflicting interests, and that his conflict adversely affected Mr. Frank's actual performance at trial; under *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980),[4] such a set of circumstances would entitle Mr. Holleman to a new trial.

The court of appeals summarized the difference between a *Holloway* claim and a *Cuyler* claim in *Cabello v. United States,* 188 F.3d 871, 875 (7th Cir.1999):

The extent to which the defendant must demonstrate prejudice depends on whether and to what extent the conflict was brought to the attention of the trial judge.... There are two options. First, if the defendant or her attorney alerted the trial judge to a possible conflict of interest or the judge otherwise knew or reasonably should have known that such a possibility existed, we will presume that the defendant was prejudiced if the judge failed to conduct an inquiry into the matter. *Holloway,* 435 U.S. at 484–91, 98 S.Ct. 1173, 55 L.Ed.2d 426 ... However, if the trial judge was not put on notice of a potential conflict, we will find prejudice only if the defendant demonstrates that her counsel actively represented conflicting interests and that the conflict adversely affected the counsel's performance. *Cuyler,* 446 U.S. at 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 ....

---

**3.** In fairness to the trial judge, none of the cases relied upon by the parties and the court had been decided when Mr. Holleman was tried twenty-three years ago. Neither party addressed the standards that governed the conduct of Indiana trial judges in 1977.

**4.** The State does not challenge the retroactive application of *Cuyler* to Mr. Holleman's case. Cf. *Moseley v. Scully,* 908 F.Supp. 1120, 1132–1137 (E.D.N.Y.1995).

The first inquiry is whether Mr. Holleman can raise these arguments at all, after having filed an earlier petition that did not include those arguments. Since Mr. Holleman filed his petition in 1995, the court employs the law of 1995 to decide the petition's permissibility, *Holleman v. Duckworth*, 155 F.3d 906 (7th Cir.1998), and that law required a petitioner to make a cause and prejudice showing as proof that his subsequent petition was not an abuse of the writ. *Haley v. United States*, 78 F.3d 282, 284 (7th Cir.1996). To demonstrate cause for not raising the issue in the previous petition, Mr. Holleman must show that reasonable unavailability of the claim's factual basis prevented him from raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Mr. Holleman's *Holloway* argument cannot survive the cause and prejudice analysis, because he can show no prejudice that resulted from his failure to raise the issue. *Holloway* does not require a state trial judge to engage in an inquiry simply because co-defendants are jointly represented. As the Supreme Court explained in *Cuyler*:

Holloway requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.

446 U.S. at 346–347, 100 S.Ct. 1708 (footnotes omitted). *United States v. Fish*, 34 F.3d 488 (7th Cir.1994), involved an application of *Holloway*. The government moved to disqualify the defendant's attorney for a conflict of interest. At the hearing on the motion, the defendant's attorney told the court he did not believe any conflict existed, and the court declined to put inquiry directly to the defendant. The court of appeals found no inadequacy in the court's inquiry:

On the basis of Attorney Koehn's representation, the trial court took no further steps to inquire into a possible conflict. Given defense counsel's duty to avoid conflicts of interest and to advise the court promptly upon discovery of a conflict, the trial court's reliance on defense counsel's own assessment regarding the potential for conflict was entirely reasonable. Indeed, it is the attorney confronted with a potential conflict who " 'is in the bast position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial' ".

34 F.3d at 493 (citation omitted). See also *Cabello v. United States*, 188 F.3d 871, 875 (7th Cir.1999) ("The Sixth Amendment does not require trial judges to behave like detectives, independently piecing together clues and speculating about how attorneys and co-conspirators might be connected.").

Judge Clement, then, had no obligation to conduct an inquiry, because no conflict was apparent; Mr. Frank simply represented co-defendants, and the charge against one of the co-defendants had been dismissed. Notwithstanding the absence of any obligation to inquire, the judge asked Mr. Frank whether Mr. Frank thought there would be a conflict. That inquiry may seem fleeting in retrospect, but brevity can't amount to a constitutional shortcoming if no inquiry at all was required. Further, *Fish* teaches that without more red lights discernible to the court, the judge was entitled to rely on Mr. Frank's response. Finally, there is no reason to think a more searching inquiry would have disclosed any conflict at that point—Mr. Frank had no reason to think Ms. Schaar would be a prosecution wit-

ness. Mr. Frank may have been obliged to inform the court of his ethical quandary once Ms. Schaar appeared on the witness stand, but nothing required the court to conduct an inquiry then, earlier, or later.

■ If the court is wrong in this conclusion that no error occurred under *Holloway*, Mr. Holleman cannot make an adequate showing of cause for not having raised the issue in 1981. By the time of Mr. Holleman's first petition, he knew virtually everything Judge Clement knew: both knew that Mr. Frank represented Mr. Love and Mr. Holleman. There were four basic facts Mr. Holleman did not know (Mr. Holleman lists other things he didn't know, but they all flow from these basic facts). First, Mr. Holleman didn't know about Mary Schaar's importance to the Love dismissal, but the record contains no reason to think that Judge Clement knew that, either, and the record contains no reason to think the judge knew before trial that Ms. Schaar would have anything to do with Mr. Holleman's case. Second, Mr. Holleman did not know why Mr. Frank chose not to cross examine Ms. Schaar, but again, the record offers no reason to think Judge Clement knew the reason, either.

Mr. Holleman didn't know that the prosecution could refile the charges against Mr. Love, and he didn't know that Judge Clement had asked Mr. Frank about the potential for any conflict. Judge Clement obviously knew about his own inquiry to Mr. Frank, and he knew the Love dismissal was without prejudice. Ignorance of the judge's inquiry cannot provide legally cognizable cause for the issue's omission from the 1981 petition: there is no constitutional distinction under *Holloway* between a trial judge's failure to conduct any inquiry at all when inquiry into a conflict is required, and a failure to conduct an adequate inquiry.

■ This leaves, then Mr. Holleman's ignorance of the State's right to refile against Mr. Love—an essential component of Mr. Frank's conflict. Mr. Holleman's actual ignorance isn't enough, though, to show cause of the type required to avoid an "abuse of the writ" defense; Mr. Holleman must show that something kept him from obtaining the information with reasonable diligence. *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) ("For cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."). Mr. Holleman's showing falls well short; his own docket sheet reflects the dismissal without prejudice of the charges against his co-defendant. Accordingly, even if Mr. Holleman could make an adequate showing of prejudice with respect to his claim under *Holloway v. Arkansas*, he cannot make an adequate showing of cause for not having presented the claim in his 1981 petition. Since he must show both cause and prejudice to avoid the State's "abuse of the writ" defense, his inability to do either compels dismissal of that claim.

■ The requirement just discussed—that a showing of cause include a showing that something kept Mr. Holleman from obtaining necessary knowledge with reasonable diligence—also defeats his effort to present his claim under *Cuyler v. Sullivan.*[5] Mr. Frank had a conflict of

---

5. The court addresses Mr. Holleman's arguments under *Holloway* and *Cuyler* as if they were separate matters; Mr. Holleman presented them as separate claims, and the State did not argue to the contrary. The court believes, though, that the two arguments are simply different procedural sides of the same substantive coin. Both look to whether the proceedings violated a defendant's Sixth Amendment right to the effective assistance of counsel. *Holloway* lowers the requisite showing of prejudice under certain circumstances, but the purpose remains that of assuring that the Sixth Amendment is not infringed. If (as the court concludes) Mr. Holleman cannot show cause for failing to raise his *Cuyler* argument concerning an actual conflict, the court believes that would foreclose any claim

interest within the meaning of the Sixth Amendment. *Gray–Bey v. United States*, 156 F.3d 733, 738 (7th Cir.1998) ("a conflict of interest arises when a defense attorney is 'required to make a choice advancing his own interests to the detriment of his client's interests.' "), quoting *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir. 1988); *United States v. Gaines*, 529 F.2d 1038 (7th Cir.1976) (conflict of interest existed when defense counsel refused to allow defendant to rebut his own oral confession for fear of incriminating two other defendants represented by counsel's associate). Mr. Holleman didn't know that Mr. Frank's loyalty to his "former" client interfered with the cross examination of Ms. Schaar; he did not learn that until some time after Mr. Evans first interviewed Mr. Frank in 1989. But Mr. Holleman was suspicious about Mr. Frank's representation of both men before his direct appeal; he raised it with his appellate attorney within months of his sentencing, and Mr. Evans's later work leaves the court with no reason to think Mr. Frank would not have divulged his quandary if he had been asked—as he did when Mr. Evans asked him in 1989 and again in 1992. Mr. Holleman didn't know because Mr. Frank didn't tell him. Under *McCleskey*, though, Mr. Holleman must show, not only his own ignorance, but also explain why reasonably diligent efforts would have left him in the dark. Mr. Holleman has presented no such explanation.

Mr. Holleman simply didn't ask Mr. Frank whether the dual representation interfered at all with Mr. Holleman's defense. By the time Mr. Evans came on the scene, Mr. Frank was hard to locate; Mr. Frank's legal career had ended after some unfortunate turns. Difficulties of that sort might have proven insurmountable to Mr. Holleman, who was imprisoned and unrepresented when he prepared and filed his first habeas petition, but the record allows no inference that Mr. Frank would have been difficult to find in 1980 or 1981. Mr. Holleman simply had stopped writing Mr. Frank because Mr. Frank told him to discuss theories for appeal with the lawyer who would be handling the appeal. Such an instruction doesn't amount to an external impediment preventing the inquiry being made.

Mr. Holleman had reason to inquire, and did not do so. He could have known of the actual conflict in 1977 if he had asked Mr. Frank. Mr. Holleman has not established cause for the omission of the conflict of interest issue from his 1981 petition, *cf. Zavesky v. Miller*, 79 F.3d 554, 556 (7th Cir.1996) ("The fact that he is not an attorney does not justify his waste of limited judicial resources by bringing two petitions when he could have aired his claims in one."), so his effort to raise the issue here constitutes an abuse of the writ.[6]

Mr. Holleman's 1995 petition constitutes an abuse of the writ. The court DENIES his petition for writ for habeas corpus.

SO ORDERED.

---

today under *Holloway*. Because the parties did not present such an argument, however, the court does not rely on such reasoning to decide the issues presented on remand.

**6.** The abuse of the writ defense could also be avoided by showing that a fundamental miscarriage would result from refusal to consider the new issue, *Montgomery v. Meloy*, 90 F.3d 1200, 1203 (7th Cir.1996), which requires a claim of actual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Mr. Holleman, who confessed his involvement in the crime, makes no such claim.